ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* STACKS.

## Opinion delivered January 30, 1911.

1. NEGLIGENCE—BURDEN OF PROVING CONTRIBUTORY NEGLIGENCE.—Contributory negligence is a matter of defense, the burden of proving which is on the defendant. (Page 409.)

2. INSTRUCTIONS—REPETITION.—It is not error to refuse to multiply instructions on the same subject. '(Page 409.)

3. SAME—NECESSITY OF SPECIFIC OBJECTION.—An objection merely to the phraseology of an instruction which is substantially correct must be specific. (Page 410.)

4. RAILROADS—INJURY AT CROSSING—CONTRIBUTORY NEGLIGENCE.—Where a traveler is injured by a train at a crossing, it is a question for the jury whether he took proper precautions for his own safety by looking and listening for the approach of trains unless the undisputed evidence shows that he did not do so. (Page 411.)

5. SAME—INJURIES AT CROSSING—EVIDENCE.—Where one injured at a railroad crossing claimed that the presence of cars upon a side track prevented him from seeing the approaching train, evidence of calculations as to how far the view was obstructed under conditions like those of the accident was admissible, as the jury might have made the calculations themselves, and it is immaterial that the plaintiff was standing in a wagon when injured while the observations were made by one on foot. (Page 411.)

Appeal from Conway Circuit Court; *Hugh Basham,* Judge; affirmed.

### STATEMENT BY THE COURT.

On November 12, 1908, at about 5:30 o'clock P. M., appellee, while attempting to drive his team and wagon across the tracks of appellant's line of railroad from south to north at a public crossing in Plumerville, Ark., was struck by a west-bound local freight train, and was permanently injured. He brought suit for damages, alleging negligence on the part of appellant's employees in operating the train.

Appellant answered, denying negligence on its part and alleging contributory negligence on the part of appellee.

The facts and circumstances connected with and attending the accident, according to the testimony of appellee, are substantially as follows:

He was at a gin in Plumerville on the south side of appellant's line of railroad, and drove his wagon and team away, intending to cross the railroad at a public crossing about 200 yards east of the gin. The wagon road from the gin to the crossing is parallel with and close to the railroad track, and is six feet lower. There are three railroad tracks there. The south track is known as the "house track," on which cars are stored. The middle one is the passing track, and the north one is the main track of the railroad. On the day the accident happened, there were cars standing on the south track on the east side of the crossing, and they were close up to it. There were also cars on the middle track east of the crossing; but these cars were not so close to the crossing. There were three or four of them, and they were 10, 12 or 14 feet east of it. The road crossing there runs north and south, and appellee was attempting to cross from the south. He drove in a trot until he reached the crossing. Appellee was standing up in the middle of the wagon, and as his team started up the grade to the first or south track, he checked it (but did not stop entirely) to look and listen for trains. He was expecting a passenger train from the west, which was due about that time, but also states that he knew extra trains were run, and that he must look in both directions, and that he did so.

The railroad track east of the crossing was straight for one-fourth of a mile, and then made a curve. Appellee drove across the south track to the middle track, looking as best he could between the cars, but did not stop his team. Just as his team started to go on the main track, the mules shied, and he hit them, and as the wagon got on the track appellee says he remembers the engine striking it, but does not remember anything else. At the time the mules shied, appellee was not where he could see the train. He had not yet got past the box cars on the middle track. Appellee did not hear the bell ringing nor the whistle sounded for the crossing. Appellee was severely injured, and one of his legs had to be amputated. No question in regard to the verdict being excessive is raised. Hence it is not necessary to further abstract the evidence showing the extent of appellee's injuries.

Other evidence was introduced by appellee tending to cor-

roborate his statements, both as to the way the injury occurred, and as to cars being on the middle track, east of the crossing. Calvin Sellers for the appellee testified:

"I am acquainted with the location and direction of the railroad track in the town of Plumerville in this county. I know where the public road crosses the track at the bridge some 150 or 200 feet east of the depot in Plumerville. I have recently examined that track and taken measurements of the distances there. The railroad tracks there are 5 feet 3 inches wide, each of them the same width. Between the main line and what is known as the "passing track" the distance is 7 feet and 9 inches. Between the passing track and the house track is 8 feet 6 inches. The distance from the south rail of the south track to the north rail of the north track is 32 feet. I have measured the length of an ordinary two-horse wagon. The length from the hind end of the bed to the front end of the tongue is 21 feet. The bed of an ordinary wagon is 10 feet. The width of a box car in addition to the tracks, when standing on the tracks, the side of the car would extend 22½ inches over each rail. That is the ordinary car I measured. Q. Did you, at the time you took these measurements, measure or ascertain how far down the main track one could see who was standing in the center of the road and in the center of the south track with a box car standing up within 18 or 20 inches of the road on the south track? Answer if you did first? A. I did not exactly, the figures you give, but I can state how the measurement was made, suppose the box car to have been standing within 12 inches. The Court: Within 12 inches of what? A. Of the east side of the road. Supposing the box car to have been standing one foot east of the wagon road crossing the tracks and any person standing in the center of the south track at about what we took to be the center of the road a distance of 6 feet by measurement, the distance to the main line could be seen past the corner of the box car, the center of the main line would first be seen 36 feet east of the center of the main line and center of the crossing. I made no measurements of how far down the track cars could have been seen or a train coming if there had been cars on the middle track. I made a diagram of the three tracks there on that occasion; made it carefully with the instruments I used to make it with. I

hardly know to what extent I am educated in mathematics. I have completed the course in arithmetic, algebra and geometry at the University of Arkansas."

Appellee introduced other evidence to show that it was not quite dark, and that the headlight of the engine was giving a dim light. That no smoke was escaping from the smokestack of the engine, and that the train was gliding in; and that neither the bell was rung nor the whistle sounded for the crossing.

Appellant introduced evidence to show that it was against the rules of the company to leave cars standing on the middle or passing track, and that none were standing there when the train came in on the day appellee was injured; that the steam had been shut off, and that the train was not running over nine miles an hour; that there were twelve cars in the train; that the bell was ringing, and that the whistle had been blown for the crossing; that the headlight was burning; that the engineer and fireman were both keeping a lookout; that the engineer was on the right hand side of the engine, the side farthest away from appellee; that, as soon as the fireman discovered the peril of appellee, he gave the alarm, and the engineer did all that could be done to stop the train; that the air was working, and the train was stopped as quickly as possible.

There was a verdict and judgment for appellee, and the case is here on appeal.

*Lovick P. Miles* and *Thomas B. Pryor,* for appellant.

This is a clear case of contributory negligence. Had the appellee exercised the precaution of an ordinarily prudent person and used his senses of sight and hearing to ascertain whether or not a train was approaching, or even if he had taken warning from the instinctive action of the animals he was driving, the accident could have been avoided. Even if appellant was negligent in failing to ring a bell or sound a whistle and to keep a lookout as alleged in the complaint (none of which is conceded), still this did not absolve the appellee from the duty to exercise due care for his own protection at a place which he was bound by law to know was a place of danger and to govern himself accordingly. 95 U. S. 698; 114 U. S. 617; 82 Ark. 525; 69 Ark. 138; 54 Ark. 431; 62 Ark. 156; 76 Ark. 225; 56 S. E.

432; 74 Mo. 602; 80 Mo. 335; 113 Mo. 1; 78 Ark. 60 and cases cited; 108 Ia. 188; 122 Mich. 149; 49 Hun (N. Y.), 605, 75 N. Y. 273; 92 Ark. 442; 61 Ark. 559.

*Sellers & Sellers,* for appellee.

1.   It is not error in the court to refuse to multiply instructions on an issue concerning which the jury have already been fully instructed. 46 Ark. 209.   Moreover objections and exceptions in gross, or which are not specific, are of no avail.  60 Ark. 256; 59 Ark. 314; 54 Ark. 19; 38 Ark. 539; 39 Ark. 339; 32 Ark. 225; 86 Ark. 193; 84 Ark. 95.

2.   Appellee's requested instruction No. 5, which was given, to the effect that the burden of proof was on the appellant to show contributory negligence, is correct.   8 Enc. of Ev. 854; 2 Thompson on Neg., § 366.

3.   The court correctly stated the law to the jury in instructing them that if the plaintiff was injured by reason of the negligence of the defendant, a recovery could not be defeated on the ground of contributory negligence unless it appeared from the evidence that the plaintiff himself failed to exercise ordinary prudence, and that such failure so contributed to the injury that it would not have occurred if he had been without fault; and that such contributory negligence would not be presumed, but must be proved by a preponderance of the evidence.  7 Am. & Eng. Enc. of L. (2 ed.) 371; 62 Pac. 14; 48 S. W. 747; 61 S. E. 1080; 68 Ark. 16; 105 S. W. 387; 75 Pac. 383; 73 S. W. 1127.

4.   Negligence or want of care is not imputable as a matter of law to one who gets hurt or killed crossing a railroad at a public crossing merely because by looking or listening he could have seen and avoided the danger.   110 S. W. 382; 2 Thompson on Neg., § 1671; 78 Ark. 355; 86 Ark. 183; 79 Ark. 141; 85 Ark. 333; 88 Ark. 172; *Id.* 231.

HART, J., (after stating the facts).  1.  Counsel for appellant contend that the court erred in telling the jury that the burden of proof was upon appellant to show contributory negligence; but the decisions of this court are adverse to their contention.  *Aluminum Co. of N. A.* v. *Ramsey,* 89 Ark. 522 and cases cited; *St. Louis, I. M. & S. Ry. Co.* v. *Sparks,* 81 Ark. 187.

2.   Counsel for appellant also urge that the court erred in refusing certain instructions on the duty of appellee to look and

listen while crossing the track of appellant. Other instructions given at the request of appellant fully covered this phase of the case, and it was not error to refuse to multiply instructions on the same point. *Jones* v. *Nichols,* 46 Ark. 209; *Aluminum Co. of N. A.* v. *Ramsey, supra.*

3. Counsel for appellant insist that the court erred in its instruction on contributory negligence. We do not deem it necessary to set out the instruction. It is copied from one given in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Fambro,* 88 Ark. 16, and is substantially correct. If counsel for appellant had any objection to the verbiage, this defect should, according to the settled rules of the court, have been met by specific objection.

4. Counsel for appellant with much force urge that the verdict is without evidence to support it because the appellee was guilty of contributory negligence. While the question is close, we think that, when the testimony is considered in the light of all the attendant circumstances adduced in evidence, it can not be said that there is no substantial evidence to warrant the verdict.

The evidence for appellee shows that neither the whistle was sounded nor the bell rung for the crossing; and while the omission of the engineer to give these statutory signals did not relieve appellee of the duty of looking and listening for the approach of trains, yet they are warnings which he had a right to rely on in determining whether a train was drawing near. According to appellee's own testimony, his view of an approaching train from the east was obstructed by box cars, both on the south and middle tracks. In such case, while the traveler must not relax his endeavor to see approaching trains, yet necessarily he relies to a great degree upon his sense of hearing to discover the approach of a train, and in doing this he listens not only for the noise made by the running of the train but for the signals which the engineer is required to give by ringing the bell or sounding the whistle for the crossing. Appellee's testimony tends to show that he was in possession of all his faculties and continually exercised them during his passage over the crossing. The testimony adduced by him shows that the headlight was dim, and on that account its rays did not warn him. It is ad-

mitted that the steam had been shut off, and that the train was drifting or gliding in, and on this account the jury might have inferred that the train came in with little noise, and no smoke escaping to give warning of its approach; that it had rounded the curve before appellee came upon the crossing, and that for this reason he could not see it on account of the box cars obstructing his view.   If he could not have seen it after it passed the curve, the jury might have found that it would have done no good for him to have stopped his wagon between the south and middle tracks to have tried to look between the box cars on those tracks.

It will be remembered, too, that the engineer and fireman, although they testify that they were keeping a lookout, did not see appellee or his team until just as they were struck. We think, under all the evidence, that the question of contributory negligence was one for the jury.

"It is too well established by the decisions of this court to need the citation of authority that a traveler along a highway, attempting to cross a railroad track, must look and listen for the approach of trains, otherwise he is guilty of contributory negligence, and can not recover damages on account of injury resulting therefrom.  Unless, however, the undisputed evidence shows that the traveler did not look and listen, then it is a question of fact for the jury to determine, from all the facts and circumstances, whether the precautions which he exercised in that respect were sufficient to acquit him of any charge of negligence." *St. Louis, I. M. & S. Ry. Co.* v. *Garner,* 90 Ark. 19; see also *St. Louis, I. M. & S. Ry. Co.* v. *Dillard,* 78 Ark. 520; *St. Louis & S. F. Rd. Co.* v. *Wyatt,* 79 Ark. 241; *St. Louis, I. M. & S. Ry. Co.* v. *Hitt,* 76 Ark. 227.

5. Counsel for appellant contend that the court erred in admitting the testimony of Calvin Sellers.  We do not think so. While the witness was not in a wagon at the time he made his observations, as was appellee while crossing the track, still the testimony of appellee shows that he could not see over the box cars when in the wagon on the south track. Sellers' testimony only tended to show at what point the main track would come into the line of vision of a person crossing the south track.  He fixed that point with an instrument, and then measured the distance

to it from where he was standing on the south track when he fixed it. The calculations he made were such as might have been made by the jury. The point was, where could the main track be seen after the traveler had passed the point where his vision was not obstructed by the box cars? It made no difference whether Sellers was high or low; he was only testifying as to the point the main track could be first seen when the obstruction to the vision caused by the box cars had been passed. The jury were entitled to give it whatever weight it carried.

The judgment will be affirmed.