## St. Louis, Iron Mountain & Southern Railway Company *v.* Hutchinson.

### Opinion delivered January 1, 1912.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.—Instructions that "the burden of proof is upon the defendant to show by a preponderance of the evidence in the whole case that the deceased was guilty of contributory negligence," and that "the defendant is not required to make proof of contributory negligence on the part of deceased if such contributory negligence appears from the evidence brought forward by the plaintiff," correctly state the rule as to the burden of proof upon the doctrine of contributory negligence. (Page 429.)

2. CARRIERS—WHEN RELATION OF CARRIER AND PASSENGER ARISES.—Where a person, having a railway ticket and intending to enter a train, goes upon the railway company's premises at the place and time for entering the train, he is not a trespasser, but a passenger, and the railway company owes him the duty to exercise ordinary care for his protection and safety. (Page 431.)

3. CONTRIBUTORY NEGLIGENCE—WHEN QUESTION FOR JURY.—Where the situation disclosed by the testimony is one from which different minds might draw different conclusions as to whether under the particular circumstances the plaintiff's intestate was guilty of contributory negligence, the question is properly one of fact for the jury to determine. (Page 433.)

4. CARRIER—NEGLIGENCE.—Proof that defendant ran a freight train with no lights on it, through a station after dark, at a rate of speed of from 12 to 35 miles per hour and without signals at a time when the passenger train was due to stop for passengers, and ran over plaintiff's intestate who was waiting to take the passenger train, is sufficient to sustain a finding of negligence. (Page 433.)

5. INSTRUCTIONS—NECESSITY OF SPECIFIC OBJECTION.—An instruction that if defendant's train was "making no noise" at the time plaintiff's intestate was killed the jury might take that fact into consideration with other facts in evidence, to determine whether intestate acted as a prudent person would have done in going upon defendant's track was not open to a general objection, although there was no evidence that the train was making no noise, as the objection should have been specific. (Page 433.)

6. DEATH—DAMAGES—EVIDENCE.—In an action for the negligent killing of plaintiff's intestate, it was not error to permit witnesses familiar with deceased and his family to testify as to his earnings and his average yearly contributions to his family. (Page 434.)

7. APPEAL AND ERROR—HARMLESS ERROR.—If it was error to permit a witness to testify that the present value of $25,000, the sum it was supposed that deceased would have contributed to his family if he had lived, was $17,000, its admission was not prejudicial where the jury fixed the damages at $4,500. (Page 434.)

8. DEATH—ACTION FOR DAMAGES—PARTIES.—Where, in an action by the widow and heirs of a person killed to recover damages caused by defendant's negligence, the complaint does not allege that there was no personal representative of the deceased, the defect may be supplied by the proof. (Page 435.)

9. SAME—DAMAGES—WHEN NOT EXCESSIVE.—Where deceased was 44 years old with a life expectancy of more than 25 years, was kind and considerate to his family and solicitous about the support and education of his children, and was contributing from $900 to $1,000 to the support of his wife and children, an award of $1,500 to the widow and $3,000 to the children was not excessive. (Page 435.)

Appeal from Independence Circuit Court; *R. E. Jeffery,* Judge; affirmed.

## STATEMENT BY THE COURT.

This suit was brought by Mrs. T. Hutchinson, for herself, as widow of the deceased and as next friend for the appellees, his children and heirs, for damages for the wrongful death of the deceased, alleged to have been caused by the negligence of the railway company.

It is alleged that deceased resided in Newark, and purchased a round trip ticket from that station to Earnhardt; that, while he was waiting at Earnhardt to take passage on the passenger train due to arrive there about 6 o'clock P. M. going to Newport, that he might return to his home, he was run over and killed by a through freight train; "that said freight train was running in the direction of Newport, Ark., and on said passenger train's time and at an unusual rate of speed; that it was running backwards and without any headlight; that the night was cloudy, raining and very dark; that defendant's employees failed to keep a lookout on said train for persons and property or give any warning, either by bell, whistle or otherwise, of the approach of said freight train; that there was no light of any kind at said station, and grounds were very dark; that said station is surrounded on three sides by high mountains, which makes the station and grounds thereof become dark quicker than it would otherwise; that defendant had on said date of the killing permitted a long string of freight and box cars to remain on the said track, extending for several hundred feet at and near the main track where the passengers got off and on defendant's trains, and in a way and manner which obstructed

the view and passage of passengers getting on and off said trains; that when deceased was undertaking to cross defendant's track for the purpose of immediately taking passage on defendant's passenger train, which was then due, to return home, he not knowing that said freight train was then approaching, and under and by virtue of the premises aforesaid, he could not and did not observe its approach, and was struck and killed within a few feet of the place in which he was to board his said passenger train by said through freight train; that said deceased was struck and killed through and by the carelessness and negligence of defendant's employees; and on account of the death of said deceased said plaintiffs state that they have been damaged in the sum of twenty thousand dollars."

The answer denied the allegations of the complaint, and that plaintiffs had been injured in any amount; alleged that the death of Perry Hutchinson, their intestate, was caused and contributed to by his own negligence, and that same was caused and brought on by a risk which he voluntarily assumed.

The testimony tended to show that the deceased, after purchasing a round-trip ticket, had gone, on the day of the injury, to Earnhardt, a flag station on defendant's line of railroad, near which was located a distillery, for the purpose of purchasing some whisky for Christmas. There was a passing track at this station, west of the main line, the distance between the centers of the two tracks being thirteen feet, and between the inside rails nine feet, and all the space between filled level and ballasted. Two dirt roads cross the main line. There was a water tank east of the main line and 196 steps south of a road crossing of it and from said tank to another crossing was 393 steps, and the main track was straight for 500 feet north of the water tank and half a mile south of it. Freight cars were standing on the passing track, and somewhere south of the water tank there was a cut or opening of about a car length left between said cars. Immediately west of the passing track and on the edge of the right-of-way were three box cars on the ground, used as section houses, where some of the section hands lived, two of them south, and the other, the largest and longest box car, used as a dining car, was north of this cut or opening between the cars on said passing track, which were between them and the main line, extending probably 150 feet towards

the water tank, and extended north. The whisky warehouse was south of said cut or opening, and between the right-of-way and the river. The place for passengers to take the trains going south was north of the water tank, at which the trains were accustomed to stop, and the testimony is conflicting as to which side of the track was treated as the station, and there was no platform there.

The day of the injury was a cold, bleak, cloudy one, and there was no depot building, nor any provision for the protection of passengers from the weather. The deceased and others had been to the warehouse and in the box cars used by the section men; had eaten dinner in the long box car, and the deceased had taken a few drinks, had a bottle of whisky, and had been treating some of the men in said cars. The passenger train from the north, going towards Batesville, and upon which the deceased expected to return home, was due at 5:50 P. M., and was a few minutes late. About 6 o'clock, Hutchinson and his companion who were waiting in the middle box car used as a section house immediately south of the cut or opening between the cars upon the siding, heard a train whistle, and one of the section men said: "There is your train." They immediately left the box car, and shortly the injury occurred, as the witness, James Langston, who was with him, testified:

"We came out of the door of the middle box car; came around until we got to the side track, and walked between the cars, and could see, as we went over there, continuously the water tank. Hutchinson was ahead of me 10 or 12 feet when we got to the string of box cars, and just about the time I turned he said: "Let's get across the track." He was in a fast walk or run, and I heard the noise of the train, and I just threw my eyes on Hutchinson, and they were so close on him that I couldn't tell whether he got across but I rather thought he did. It was dark at that time. I could see all of the water tank, and there was no obstruction between me and the water tank, except the train that was coming there. I was going onto the side track, and threw my eyes from the track, and then looked again to see where he was, and they were so close together that I couldn't tell whether he made it across or not. When he spoke to me, he must have been something like on the main track, because when he spoke the noise of the train drew my

attention.    When he finished talking and I heard the noise of the train, the train was in the way, and I didn't see Hutchinson struck.    I checked right on the side-track when I first heard the noise of the train and saw the bulk of the train.    I looked as soon as I could while crossing the side-track.    When he, Hutchinson, said this, and I heard the train, I was right at the north end of the box car.    Before that time I didn't see any train approaching, didn't hear the bell ringing or the whistle blown, or escaping steam, and didn't hear the train before the moment he spoke to me and said: "Let's get across the track."

The train that killed deceased was a freight train, an engine and caboose, the engine running backwards and the evidence was conflicting as to whether there was a light upon the front end of it or not:    some of the witnesses testifying there was none, while the railroad employees said there was a lantern hanging over the end of the tender, which was in front. A strong wind was blowing towards the approaching train, which was making very little noise and was running ten to fifteen miles an hour, according to the statement of the conductor, who also said it was dark when he passed Earnhardt, while other witnesses testified that it was going all the way up to 35 miles an hour.    None of the employees on the train saw deceased, and they did not know of the injury until they reached Batesville.    The passenger train stopped at the water tank for water and to take on passengers, as was the custom, and it was the understanding of the deceased that it would do so.    The water tank was north of the cut or opening between the freight cars on the side-track between which and it deceased was killed, but how far the evidence does not disclose.    There was room between the main line and the box cars on the side-track for a person to walk, and deceased could have remained upon that side of the main line, and should have done so, according to the railroad employees, to have boarded the train at the proper place.

There was testimony as to the earning capacity of the deceased and his treatment of his family and the amount contributed to their support.    The court instructed the jury, gave five of the twenty-three instructions asked by the defend-

ant, modified two others, and gave them as modified, and gave three instructions upon its own motion.

The jury returned the following verdict: "We, the jury, find for the plaintiff in the sum of $1,500, and for the minor children the sum of $3,000, making a total of the sum of $4,500. S. A. Ruddell, foreman." And from the judgment the defendant appealed.

*W. E. Hemingway, E. B. Kinsworthy, James H. Stevenson* and *S. D. Campbell,* for appellant.

*S. A. Moore* and *John W. & Joseph M. Stayton,* for appellees.

Kirby, J., (after stating the facts). It is contended that the verdict is not sustained by the testimony; that certain testimony was improperly admitted; that the court erred in giving instructions numbered 2, 3 and 4 at plaintiff's request; in giving instruction numbered 1 on its own motion; in refusing to give appellant's instructions as requested, and in modifying and giving as modified two of same. We do not propose to review appellant's numerous objections, nor to set out all of the instructions given or refused, but will notice only such as are necessary to the decision herein.

Appellant's instructions were requested upon the theory that the deceased was a simple trespasser upon its tracks, to whom it owed no duty, except not to injure him after his perilous position was discovered; and, since the undisputed testimony shows that the employees operating the train did not discover him at all, that it would not be liable.

The first instruction complained of tells the jury that if it finds from the preponderance of the evidence that deceased was killed by defendant's train, it makes a *prima facie* case of negligence against the defendant, and to escape liability "the burden is upon the defendant to show, by a preponderance of the evidence, either that it was not guilty of negligence, or that the deceased was guilty of contributory negligence."

Instruction No. 3 reads: "The burden of proof is upon the defendant to show by a preponderance of the evidence in the whole case that the deceased was guilty of contributory negligence."

Instruction No. 22 given for the appellant reads: "The defendant is not required to make proof of contributory neg-

ligence on the part of deceased if such contributory negligence appears from the evidence brought forward by the plaintiff."

These instructions, taken together, give the correct rule as to the burden of proof upon the defense of contributory negligence, although it is generally better expressed in a different and the usual form, as said in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Brown,* 100 Ark. 107.

As we understand it, the chief objection was to the giving of such instruction at all, it being contended by appellant that deceased was a trespasser, that no presumption of negligence arose against it for injuring him, and that the burden of proof was upon plaintiff to show that there was a discovery of his peril and negligence of the company in failing to avoid injury after such discovery; but we do not agree to this contention.

It is undisputed that deceased purchased a round-trip ticket from his home, Newark, to Earnhardt, a flag station; that it was necessary for him to be at the station to return upon the passenger train due to arrive there at 5:50, which usually stopped at the tank to take water; that there was no place for passengers provided for by the company for the protection of passengers against the weather, and there was no place, other than the box cars where the section hands lived in which he took shelter, which could have been resorted to by such passengers for the purpose, except the whisky warehouse, south of the cut or opening between the freight cars on the passing track and still west of the box cars on the right-of-way, in which the section men lived. Certainly, a passenger, who could not leave the station before the arrival of this expected train, would not be required to stand all day unprotected in the cold, and necessarily he must resort to the only places available for such protection and return to the station for the train in time to embark.

If deceased had gone to the whisky warehouse and remained there, he would have, in coming to the train, doubtless, passed through this same cut or opening between the cars on the passing track, which others were accustomed to use, and must have done so unless he went around such cars, going to the north or south. It is also true that, after crossing the passing track, there was room between the cars standing on it north towards the water tank and the main track for him to have

safely gone to the place where he could have boarded the pas-
senger train, without crossing the main track, but that fact
was not easily ascertained in the night by a stranger to the
place; and he came out of one of said section house box cars, the
middle one, after the train had whistled for the road crossing,
north of the water tank, and one of the section hands had said,
"There is your train," passed through the opening between
the cars on the side-track hurriedly, expecting that the passenger
train would stop for passengers at the water tank, still north
of him, as was the custom, and was run down and killed by
the extra freight train running backwards at from 12 to 35
miles an hour, after dark, and making very little noise, with no
headlight, no light whatever, on the front end, according to
some of the witnesses, and only a switchman's lantern, ac-
cording to those of appellant.   The evidence further was in
conflict as to which side of the main track the station was on,
the companion of deceased having testified that they debarked
that morning on the east side, or the side to which he was
attempting to cross when struck, and there was some testimony
that deceased had been drinking during the day, but all who
saw him testified that he was not drunk.   There is some
ground, however, for the contention that if deceased had been
in the exercise of reasonable care for his own safety he might
have seen or heard the approaching train in time to have
avoided the injury, since his companion discovered it, but it is
certainly true that he could not and would not have been in-
jured at all, if it had been the passenger train, which he had the
right to expect and did think it was, when attempting to reach
the station to embark.

Under the circumstances, deceased was not a trespasser,
and was, within the meaning of the law, a passenger, having
started to the train with a ticket already procured, and being
upon the company's premises in the immediate vicinity of
the place for taking the train, with the intention to board it
on the return trip home, when it stopped for passengers, and
to take water at the tank.

"This relation arises not merely when the passenger enters
the train with the ticket already purchased, giving him a con-
tract right to ride, but when he enters upon the premises of
the carrier, with intention to take a train in due course."

*Chicago, R. I. & P. Ry. Co.* v. *Stepp*, 22 L. R. A. (N. S.) 350; *Metcalf* v. *Yazoo & M. V. Ry.*, 28 L. R. A. (N. S.) 311; *St. Louis & S. F. Ry.* v. *Kilpatrick*, 67 Ark. 53.

A passenger has an invitation to come to the place of the stoppage of trains; and it is the duty of the railway company to anticipate the presence of persons about its stations when a train is arriving and to exercise ordinary care for their protection and safety. *St. Louis, I. M. & S. Ry. Co.* v. *Woods*, 96 Ark. 315, 131 S. W. 869; *Illinois Cent. Ry. Co.* v. *Daniels*, 27 L. R. A. (N. S.) 131; *Brackett* v. *Louisville & N. Ry. Co.*, 111 S. W. 710.

The court correctly declared the law to be that deceased was bound also to the exercise of ordinary or reasonable care; and if by the exercise of such care he could have seen the approaching cars in time to have avoided the injury to himself, and failed to do so, that no recovery could be had. It further told the jury, on appellant's request, that it was the duty of deceased to look and listen for approaching trains, and continue to keep a lookout and listen for such cars up to the time he reached the place at the main track where he was struck, and that plaintiff could not recover if he failed to do so; and that if he saw or heard, or by the exercise of reasonable care could have seen or heard, the approaching cars upon the main line in time to have avoided the injury and failed to exercise such care, either by the failure to look, listen or stop, if necessary, before going upon or near the main line, the plaintiff could not recover. The instructions given upon the court's own motion were also more favorable to the appellant than it was entitled to, all being given upon the theory that deceased was bound to the exercise of as much care in the crossing of this track at the time and place he attempted to cross it as a traveller would be upon a highway at a crossing of the railroad track, which is not the correct rule. *St. Louis, I. M. & S. Ry.* v. *Tomlinson*, 69 Ark. 496. But appellant can not complain that these instructions required a greater degree of care of deceased than he was held to by law.

In *Arkansas Cent. Ry. Co.* v. *Williams*, 99 Ark. 167, the court said: "Where it is uncertain as to whether or not there was a possibility for a traveller to have been able to hear or see the approaching train, either because the evidence is conflicting or because there is doubt as to the inference to be

drawn from the facts proved, the question of contributory negligence is properly one to be submitted to the jury."

It has long been settled law that "where the situation is such from which different minds might draw different conclusions as to whether, under the particular circumstances, the plaintiff was guilty of contributory negligence, the question is properly one of fact for the jury to determine." *Missouri & N. A. Rd. Co.* v. *Clayton*, 97 Ark. 347; *St. Louis, I. M. & S. Ry. Co.* v. *Sparks*, 81 Ark. 187; *Aluminum Co. of N. A.* v. *Ramsey*, 89 Ark. 523; *St. Louis, I. M. & S. Ry. Co.* v. *Stacks*, 97 Ark. 405; *St. Louis, I. M. & S. Ry. Co.* v. *Hitt*, 76 Ark. 227; *Missouri & N. A. Rd. Co.* v. *Bratton*, 85 Ark. 337.

There can be no doubt that the question of contributory negligence on the part of deceased was one that should have been submitted to the jury, and the running of appellant's train backwards after dark, through this station, with no lights upon it, at a rate of speed of from 12 to 35 miles per hour at a time when the passenger train, that was accustomed to stop for passengers at the water tank, before reaching the place of injury, was due, was evidence of such negligence that the jury were warranted in finding that appellant failed to exercise that ordinary care for the protection of deceased that it was bound by law to use.

The objection to plaintiff's instruction numbered 4 is not well taken, for it does not, as contended, assume a fact as proved which the evidence shows was not true, but at most allowed the jury, if it found that "the train was making no noise, to take that fact into consideration with the others included in the instruction, and all other facts and circumstances in evidence, in order to determine whether or not deceased acted as a reasonable, prudent person would have done in going upon the track as he did at the time of the injury, and a specific objection at the time would doubtless have resulted in it being conformed to appellant's view of the law.

Appellant's objection to the refusal of the court to give a great number of instructions asked by it, on the theory that deceased was a trespasser upon its tracks at the time of the injury, is met by the view already announced herein that the deceased was not a trespasser, and the instructions were there-

fore not applicable to the case, and the court committed no error in refusing to give them.

It is next contended that the court erred in admitting the testimony of certain witnesses as to the earning capacity of deceased and the testimony of an insurance agent, relative to the present value of an annuity of $25,000, it being assumed that deceased's total contribution to his family during the remainder of his life expectancy would have amounted to that sum. An adult son of the deceased testified that he was familiar with his father's business and the contributions made to his family, and, that, after deducting an amount that would represent his personal expenses, his net earnings and contributions to the family would be $900 to $1,000, and he later stated, without objection, that his father would contribute between $900 and $1,000 a year to the support of his family, but that $150 should be deducted from that sum as his personal expenses.

Another witness testified that he was familiar with deceased and his family, and had boarded with them, and knew their manner of living; that he was a man of experience, and, based upon this knowledge, he stated that he judged deceased's average yearly contributions to his family, exclusive of his personal expenses, would be between $900 and $1,000.

Another witness, Nat Wilson, testified that he was intimate with deceased and his family, and that he was at his place frequently; that he was an industrious man, economical, and cared for his family; "seemed attentive to his family in most every way."

The objection to the introduction of this testimony was general, and presented no specific ground for its exclusion. The testimony was competent and relevant, and the court committed no error in its ruling in permitting its introduction. *Railway Co.* v. *Sweet,* 60 Ark. 550.

If the testimony of the insurance agent that the present value of an annuity of $25,000, the sum it was supposed deceased would have contributed to his family, was $17,000 was not competent, its admission was not prejudicial, since the jury evidently disregarded it entirely and fixed the total damages at the sum of $4,500.

Certain remarks of counsel for appellee in the closing ar-

gument were objected to and are assigned as error here, but such of them as were open to objection were withdrawn, and the others did not transcend the scope of legitimate discussion in the fair presentation of the case to the jury.   The last assignment is that the court erred in rendering judgment on the verdict, which, it is also contended, is excessive.   The verdict was: "We, the jury, find for the plaintiff in the sum of $1,500 and for the minor children in the sum of $3,000, making a total of $4,500."

This suit was brought by the widow and heirs of the deceased for damages for his wrongful death as authorized by section 6290 of Kirby's Digest, there being no administrator of his estate appointed.   It is true that the complaint does not allege that there was no personal representative of the deceased, but it shows that the widow and all his children were parties, and the proof shows that no personal representative had been appointed, and that all the heirs of the deceased were parties, which supplied any defects in the averments of the complaint, and such suit could be maintained by them.   *St. Louis, I. M. & S. Ry.* v. *Harper,* 44 Ark. 524; *Healy* v. *Conner,* 40 Ark. 352; *St. Louis, I. M. & S. Ry. Co.* v. *Watson,* 97 Ark. 405.

It is also true that said section provides: "The amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they may deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person."

And appellant especially urges that the damages awarded the minor children by the verdict are excessive.   Two of them were girls, eleven and four years old, respectively, and one, a boy, six years of age at the bringing of the suit.   They were entitled to maintenance and support by their father until their arrival at majority and pecuniary damages for such loss, as well as to any damage they may have suffered on account of the loss, of education and training because of his death.   The widow was likewise damaged to the amount deceased would reasonably

have contributed to her support during his and her life expectancy. Deceased was 44 years old, strong, in good health, industrious and economical, with a life expectancy of more than 25 years, and was kind to his family and considerate of their interests, providing for them as well as a poor man could, solicitous about the education of his children and contributing from $900 to $1,000 a year to their maintenance and support, at the time of his death, and, under the circumstances, we do not regard the verdict of $4,500 as excessive, considered as an entire sum or separately, as awarded by the jury.

Without regard to whether the amount should have been divided by the jury, appellant can not complain that it was done, being concerned only with the payment, since all the persons who had a pecuniary interest arising out of the death of deceased were parties to the suit, and without regard to their division of the damages, it will be protected in the payment of the judgment rendered.

Finding no reversible error in the case, the judgment is affirmed.