MYERS v. ANDRE.

## Opinion delivered December 17, 1923.

1. MALICIOUS PROSECUTION—BURDEN OF PROOF.—In an action for malicious prosecution growing out of a charge of raising a check, which plaintiff alleged and defendant denied was written by the latter in the amount for which it was cashed, the burden was on plaintiff to show that defendant wrote the check in such amount, and falsely swore before the grand jury that he did not do so, and that the indictment of plaintiff was predicated on such false testimony.

2. MALICIOUS PROSECUTION—INSTRUCTIONS.—In an action for malicious prosecution on a charge of raising a check, instructions that, if defendant did not write the check for the amount paid on it, the jury could not find for plaintiff, unless convinced that defendant maliciously, wilfully and without probable cause to believe that plaintiff had altered the check, instigated the grand jury to indict plaintiff, and that, if. defendant consulted and made a fair, full and complete statement of all he knew about the transaction to a reputable and reliable attorney, on whose advice he placed the matter before the grand jury, the verdict should be for defendant, *held* properly given and not to conflict with an instruction to find for the plaintiff if the check was written by defendant for the sum paid on it, and he testified falsely before the grand jury that it was written for a less amount.

3. MALICIOUS PROSECUTION—BURDEN OF PROOF.—In actions for malicious prosecution, plaintiff must prove both want of probable cause and malice.

4. MALICIOUS PROSECUTION—INSTRUCTION.—In an action for malicious prosecution on a charge of raising a check, where the court instructed the jury on the issue as to whether defendant acted on the advice of counsel, it was error to refuse an instruction that, if defendant wrote the check for the amount paid thereon, advice of counsel would be no defense.

5. APPEAL AND ERROR—ABANDONMENT OF EXCEPTIONS.—Exception to the refusal of an instruction will be treated as abandoned when not assigned as ground for new trial in motion for new trial.

6. MALICIOUS PROSECUTION—EVIDENCE OF STATEMENTS OF PARTY.—In an action for malicious prosecution on a charge of raising a check, testimony that defendant said, in discussing the case against plaintiff, that "he gave a certain man in this town a check for $52.70, and his G—d d—d wife raised it $100," *held* competent on the issue of malice.

Appeal from Mississippi Circuit Court, Osceola District; *W. W. Bandy,* Judge; reversed.

*J. T. Coston,* for appellant.

The court erred in instructing the jury on the doctrine of probable cause. 163 S. W. 518. It was error for the court to exclude the testimony of witness Lemmer, as to showing malice on the part of Andre. 104 S. E. 729; 240 S. W. 351; 80 S. W. 147; 117 N. E. 759. The court erred in refusing to instruct the jury that legal advice would be no defense, if Andre wrote the check for the full amount himself. 187 S. W. 626.

*Virgil Greene,* for appellee.

Instruction No. 2, given by the court, on the subject of probable cause, was properly given to the jury. 18 R. C. L. 36; 82 Ark. 252; 96 Ark. 325. Instruction No. 3, submitting the question of legal advice, was proper. 71 Ark. 351; 100 Ark. 316; 107 Ark. 74. The instruction was proper on the question of the good faith of the defendant, acting under advice of counsel. 76 Ark. 41. The testimony of witness Lemmer was properly excluded. In an action for slander the plaintiff must prove the use of substantially the words alleged. 98 Ark. 312; 122 Ark. 254; 124 Ark. 390; 153 Ark. 275.

WOOD, J. This action was brought by the appellant against the appellee to recover damages for malicious prosecution. Appellant alleged, in substance, that the appellee, on October 4, 1921, made a check payable to E. H. Meyers, husband of the appellant, for the sum of $152.70, which check was delivered to the appellant for her husband; that on the 21st of December, 1921, appellee appeared before the grand jury of Mississippi County and maliciously and falsely testified that the check mentioned was raised by appellant after its delivery from $52.70 to $152.70; that, predicated upon such testimony, the grand jury returned an indictment against the appellant, charging her with forgery and uttering a forged instrument; that on the 24th of March, 1922, the appellant was tried on the above indictment and acquitted;

that appellee, before the indictment was returned, had stated to divers persons and on divers and sundry occasions that the appellant had raised the check, thereby falsely and maliciously accusing appellant of the crime of forgery. Appellant prayed for punitive and actual damages in the sum of $50,000.

Appellee, in his answer, admitted that the appellant was indicted, tried, and acquitted of the crime of forgery, as set up in the complaint, but specifically denied all of its other allegations.

The appellant adduced evidence tending to show that her husband ordered a carload of coal shipped to Osceola, intending to take what he needed for his own use and to sell the balance to his neighbors at a sum named. When the coal arrived Meyers was recovering from a long spell of typhoid fever. He was still in bed; and appellant was attending to his business for him. At the time the coal arrived the appellee and Meyers were close friends and neighbors. Appellee at the time was at Meyers' home, calling on him. Meyers stated that he had a carload of coal coming, and didn't know how to get rid of it, and appellee said to Meyers that he would dish it out for him if he would have his wife make out a list of those to whom it was going, which she did, and appellee delivered the coal. Appellee testified that he hauled the nine loads of coal he was to take out of the car and turned the residue of the coal over to the parties named in the list. Appellee didn't weigh the coal for the other parties and didn't settle with Meyers for any of it except his own, which amounted to $50 and some cents, but the appellee, through mistake, executed his check to Meyers for $52.70. Appellee collected from one of the parties for Meyers. They wanted him to collect from another party, but finally made arrangements to collect for themselves.

The testimony of the appellant concerning this was to the effect that, during the time her husband was sick,

appellee was at their house almost every evening. He and appellant's husband apparently liked each other. Appellant and her husband expected a man by the name of Laughlin to handle the coal when it came, but appellee assumed authority, and said he would handle it, and would not let people have it who didn't have the money. When appellee called up about the check he first talked to Meyers. Appellant heard her husband ask over the phone, "What is the matter, Doc?" and she then took the 'phone out of her husband's hand, and also asked appellee what was the matter, and he said, "I gave you a check for $152.70, and it's $100 too much." Appellant replied, "If there is any discrepancy, I will have either Joe Young or Mr. Laughlin come and straighten it up." In less than an hour the bank called appellant and told her that the check had been raised. As soon as her husband was able, he and appellant went to the bank. When appellant was accused of raising the check, they called in Mr. Coston, their lawyer. Appellant told appellee that, if there was anything wrong with the check, to come over to their house, and they would adjust it. Appellant knew that the prosecuting attorney offered to dismiss the prosecution against her, but she, acting with the sanction and advice of her counsel, insisted that the case be tried. Her reason for such action was that it was public talk, and, if she had allowed the case to be dismissed, it would be said that they had compromised with the appellee. Appellant was seeking vindication. Appellee had damaged her character. Appellant testified that she had been employed in the postoffice before she married Meyers, and stated that she had suffered enough humiliation and embarrassment from the time of the indictment until the trial to kill any person in the world. She consulted with her attorney. At the time the check was given to her husband he was receiving $300 per month salary, payable every two weeks, which continued during the time he was ill, and in addition he received a sick benefit of $25 per week. Appellee

didn't pay appellant or her husband the money received on Coley Hall's check. He was at the home of the appellant, and stated that he had delivered Hall's coal and put the check for same in his pocket. He had never since that time been in their house. Appellant stated that she voluntarily appeared before the grand jury and wrote the words "one hundred" in the grand jury room, but she absolutely did not write the words "one hundred" on the check. She indorsed her husband's name on the check, and nothing more. It was shown, on behalf of the appellant, that the appellee appeared before the grand jury and testified that the check mentioned was raised from $52.70 to $152.70. He was subpoenaed before the grand jury and questioned about other matters. On cross-examination the witness testified that the appellee, in his manner of testifying before the grand jury concerning the check, "seemed to be reticent and showed no feeling in the matter. He left it up to the jury, and regretted to make the report."

Two experts in handwriting testified on behalf of the appellant, after being shown the alleged forged check and after examining a large number of checks signed, some by E. H. Meyers and some by Mrs. E. H. Meyers, but with their signatures concealed from the witnesses, that none of the checks which bore the genuine signature of Mrs. Meyers were in the same hand as that on the face of the alleged forged check; and, after examining a large number of checks that were signed by the appellee, they testified that the "d" in those checks was made by the same person who wrote the alleged forged check. One of these experts testified that the words "one hundred" in the alleged forged check and the signature of the appellee (V. J. Andre) were, in his opinion, written by the same person.

W. C. Lemmer was introduced as a witness for the appellant, and he testified on direct examination as follows: "Ques: Did he (appellee) make any remark to you about who wrote the check? Ans: Yes sir. Ques:

What did he say, if anything? Ans: He told me he gave a certain man in this town a check for $52.70 and his G—— d—— wife raised it $100, and I asked him what was her object in raising it, and he said he didn't know unless her husband put her up to it." On cross-examination the witness testified that he was at Osceola in the interest of the Burns Detective Agency, investigating this check. He reported the matter to Judge Coston. Witness pretended to be an automobile mechanic. He had the conversation with the appellee detailed above on the second day after his arrival in his place of business. The conversation was concerning the case of the State against appellant. He further testified on cross-examination as follows: "Ques: Have you detailed to the jury all he said on that subject? Ans: That is all he said that I can remember. Ques: That ended your labors? Ans: No sir; he was very reluctant about talking about it. I forced him on it afterwards once, and he wanted to know what the opinion of the people was around here, and I told him the opinion was divided. Ques: And all he said is he had given a check for fifty-two dollars and seventy cents to a man in town, and his damned wife raised it one hundred dollars, and he thought she did so under the influence of her husband, or, in substance, that of her damned husband? Ans: Yes sir. Ques: He said nothing further to you on the subject? Ans: No sir."

There was further testimony on behalf of the appellant corroborating the testimony of appellant to the effect that they were present and heard appellee tell Mrs. Meyers, in a conversation between them concerning the check of Coley Hall, that he had Coley Hall's check for the coal, that he had it in his pocket.

Hall testified that he gave the check for the coal that he purchased from Meyers to the appellee. Another witness testified that he heard Mrs. Meyers tell appellee, over the telephone, that if there was any mistake about the check to come over and she would be more than glad

to fix it up. At the time Meyers had just got up from a spell of sickness.

Another witness, who was foreman of the grand jury, testified that the grand jury was hot after whiskey sellers, and they thought that the appellee might know something about it. The check in question had been brought to the attention of the grand jury by the appellee. While the witness was going across the street, appellee hailed him and said, "I want you to come over to the barn—I have something to show you." Witness replied, "I ain't got no time now—I will come over later." Witness supposed it was the check. Appellee didn't mention the check that day at all. Witness had heard about it through other sources, and stated that they would have him subpoenaed before the grand jury on other matters.

Appellant, on being recalled, stated that it was before the check for $152.70 was delivered to her that the appellee stated that he had Coley Hall's check. The appellee never paid for Coley Hall's coal or his own except by the check for $152.70. He never paid the appellant cash at any time, and was never in their house after he said he had Coley Hall's check in his pocket.

The appellee, in his own behalf, testified substantially as heretofore set forth, and further to the effect that, when Hall gave witness a check for the coal purchased by him from Meyers, witness cashed it in the sum of $50 and took it over to the appellant, telling her that it would help to pay the freight bill. He stated that no one except the appellant was present when he delivered the money to her. The delivery of the coal was made by a man named Quinn, and the appellee accepted Quinn's figures on the coal, and Meyers and his wife also accepted them. Quinn figured and weighed it all, and the book weights were sent to Mrs. Meyers, and she didn't question them in any way. Witness sent the check for his coal in an envelope with the freight bill and invoice, and didn't see the check any more until he took

it out of the envelope, after it had been canceled by the bank and returned to him with his monthly statement and checks. The alleged forged check called for $52.70 when witness sent it to the appellant, and the next time he saw it among witness' returned checks it called for $152.70. Witness didn't write the words "one hundred" on the check. Witness wrote the check for $52.70 and stated on the check what it was for. He didn't write the words "Andre, Hale, or Hall," on it and didn't know that it had been raised until his attention was called to the fact by the Citizens' Bank. When his attention was called to the fact that the check had been raised, witness rang up the residence of the appellant and told her that he had sent her a check for $52.70 and that it had been raised to $152.70, and called her attention to the fact that there was something wrong, and she replied, "It can't be," and seemed vexed, and witness said, "This is no place for an argument," and hung up the receiver. From that day the appellant and her husband had not said anything to the witness about it.

Appellee testified that appellant acknowledged that she and her husband still owed the appellee $20 in the coal deal which they had never offered to settle. After the matter of the raised check was called to witness' attention, he consulted with his attorney about it, and laid the whole facts before him. Witness appeared before the grand jury in obedience to a subpoena and laid the facts before them. He made no effort to prosecute appellant. He had no malice towards her, and did not testify falsely, and what he did along the line of prosecution was done on the advice of counsel. He didn't in any manner urge to any person that the appellant be prosecuted. After the indictment was lodged, the prosecuting attorney asked the witness if he objected to dismissing the case, and witness replied, "Use your best judgment." He said in open court that he didn't want to prosecute.

The above is substantially the material testimony as developed at the trial.

Among other instructions the court gave on its own motion instruction No. 2, as follows: "But if you find that the defendant did not himself write the check for $152.70, but for $52.70, then, before you can find for the plaintiff, you must be convinced by a preponderance of the evidence that defendant instigated and caused the grand jury to indict the plaintiff, and that this was done maliciously and wilfully and without probable cause to believe that plaintiff had altered the check. And if you find that defendant instigated or procured the grand jury to find the indictment, but that he did so without malice towards the plaintiff and with probable cause to believe that plaintiff had altered the check, your verdict should be for defendant. If you find that the defendant did not instigate or induce the grand jury to find the indictment, your verdict should be for the defendant."

The plaintiff offered specific objection to the giving of this instruction to the effect that it injected into the case an issue not raised by the pleadings, and further, because "if Andre himself wrote the check for $152.70 in the first instance, then, in that event, malice is implied, and there is no question of good faith to be submitted to the jury, and because it was in conflict with instruction No. 1, and was abstract, misleading, and prejudicial."

Instruction No. 1 given at the instance of the appellant is as follows: "If you find from a preponderance of the evidence that the check in question was written by Victor J. Andre, payable to E. H. Meyers, for the sum of $152.70, and if you further find that the said Andre testified falsely before the grand jury that the check was written by him for only $52.70, and that such testimony resulted wholly or in part in the indictment of the plaintiff, Mrs. Meyers, your verdict should be for plaintiff."

Instruction No. 3 given on the court's own motion is as follows: "You are instructed that if you find from the evidence that, before plaintiff was indicted and prosecuted, charged with the crime of altering the check in controversy, the defendant consulted a reputable and reliable attorney and made to said attorney a fair, full and complete statement of all he knew about the said check and the plaintiff in connection therewith, withholding from said attorney no material fact ·in regard to the changing or altering of the said check, or any of the persons connected therewith, and was advised by said attorney to place the matter before the grand jury, and that he, acting in good faith, did this, and had nothing further to do with the procurement of the indictment or the prosecution thereunder, your verdict should be for the defendant." The appellant specifically objected to the giving of this instruction, on the ground that the complaint alleges that Andre wrote the check himself for $152.70, and, being based on that ground and no other, if he did write the check himself, he is liable, and the advice of counsel would be no defense; and further, that the instruction was in conflict with instruction No. 1 given at the instance of the appellant.

Instruction No. 6 given on the court's own motion is as follows: "Now, there has been some testimony here introduced by the plaintiff in regard to a statement by some gentleman that he had heard the defendant here in town make the remark that he had given a check up here to some man for $52.70 and his damned wife had raised it to $152.70. The court has decided that that proof is incompetent, and it is withdrawn from your consideration, and the court will depend upon the intelligence of this jury to not regard that testimony for any purpose whatever. The court has decided the testimony is incompetent, and no incompetent testimony has a right to go before you for any purpose."

The jury returned a verdict in favor of the appellee. The court rendered judgment dismissing the appellant's action, from which is this appeal.

1.   The appellant bottomed her cause of action solely upon the allegation that the appellee had himself written the check to the payee, Meyers, in the sum of $152.70, and then appeared before the grand jury and wilfully, deliberately and maliciously testified falsely that he wrote the check himself for $52.70, and, after the check was delivered, it was raised by the appellant to the sum of $152.70, and that, upon such false testimony, the prosecution was instituted against her.   The denial of this allegation in terms raised the issue of whether or not the appellee wrote the check himself.   Upon this issue the burden of proof was upon the appellant to show by a preponderance of the evidence that the appellee wrote the check himself and that he falsely swore before the grand jury that he didn't write it, and that the indictment was predicated, and the prosecution thereby instigated, upon such false testimony.   The court, in effect, so instructed the jury in instruction No. 1 given at the instance of the appellant.   Instruction No. 1 presents the appellant's theory of the case, as set forth in her complaint.   The appellee denied the allegations of appellant's complaint to the effect that he had written the check himself, and that he had testified falsely before the grand jury that he did not write the check.   The effect of the allegations of his answer is that he didn't write the check himself, and that his testimony to that effect before the grand jury was true, and that he did not voluntarily appear before the grand jury and accuse appellant of raising the check.   His contention, as made by his answer and proof adduced in support of its allegations, was that he did not write the check himself, and that he did not seek the prosecution of the appellant, but simply, when subpoenaed before the grand jury, laid the facts before them.   He also contended that what he did in the matter was after he had sought the advice and direction of counsel, and that his actions were predicated upon such advice.

The court therefore, in its instructions Nos. 2 and 3, correctly presented appellee's theory of the case, based

upon his answer and the testimony adduced by him to sustain his contentions. These instructions were not in conflict with instruction No. 1 given at the instance of the appellant, and, when taken together, declare the law in conformity with numerous decisions of this court. In actions for malicious prosecution it is essential that plantiff prove both the want of probable cause and malice in order to maintain the action. *Foster* v. *Pitts,* 63 Ark. 387; *Price* v. *Morris,* 122 Ark. 382; *Keebey* v. *Stifft,* 145 Ark. 8. To be sure, if the appellant proved that the appellee wrote the check himself, the jury would be warranted in finding from this and the other facts in evidence that the prosecution was malicious and without any probable cause. But these issues, under the evidence, were for the jury.

2. Instruction No. 3 given by the court on its own motion was a correct declaration of law applicable to the facts pertaining to the issue raised by the testimony as to whether or not the appellee acted on the advice of counsel. *Price* v. *Morris, supra,* and other cases there cited. In view of this instruction, however, in order to fairly present the theory of appellant to the jury, the court should have given appellant's prayer for instruction to the effect that, if Andre wrote the check himself for $152.70, the advice of counsel would be no defense, and a refusal to so instruct the jury would have been reversible error if error in this ruling of the court had been assigned in the motion for a new trial. While the appellant made the request for such an instruction, and the court refused to grant it, and appellant's exceptions were duly noted, she failed to bring forward her exceptions to the ruling in the assignment of error in her motion for a new trial. Therefore such exceptions to the ruling of the court will be treated here as abandoned.

3. The court erred in excluding the testimony of the witness Lemmer to the effect that, in a conversation with the appellee concerning the case of State of Arkan-

sas against appellant, the appellee, in speaking of the alleged forged check, said to witness that "he gave a certain man in this town a check for $52.70 and his God d—— wife raised it $100, and asked him what was her object in raising it, and he didn't know, unless her husband put her up to it." It occurs to us, in the connection in which it was elicited, this testimony shows that the remarks of appellee clearly had reference to the appellant, and was competent on the issue as to whether or not the prosecution, if instituted by the appellee, was prompted by malice. *Ramsey* v. *Flowers,* 72 Ark. 316; see also *Goodman* v. *Cline,* 104 S. E. 729; *Read* v. *Lindley,* 240 S. W. 351.

We find no other reversible error, but for this error the judgment is reversed and the cause remanded for a new trial.