GAITHER COAL COMPANY v. LECLERCH.

Opinion delivered October 20, 1930.

*E. H. McCulloch,* for appellant.

*White & White, G. L. Grant,* and *Mosman, Rogers & Buzard,* Kansas City, Mo., for appellee.

MEHAFFY, J. This appeal is prosecuted to reverse a judgment of the circuit court against appellant and in favor of appellee for $10,000 for the death of appellee's husband, Frank LeClerch.

On and prior to July 13, 1928, Frank LeClerch, who was the husband of appellee, was in the employ of the Gaither Coal Company as a coal miner engaged in mining coal at appellant's mine in Logan County, Arkansas. Within the mine where deceased, Frank LeClerch, was at work for appellant, there was a line of wires charged with electricity, and appellee alleged that appellant negligently and carelessly failed to reasonably and sufficiently insulate said wires so as to prevent the discharge therefrom of such dangerous, deadly current of electricity, and negligently and carelessly failed to insulate said wires; that appellant negligently and carelessly permitted the insulation of said wires to become old, rotten, worn out and defective, insufficient, wet and insecure so that the deadly and dangerous current of electricity had passed through said insulation and negligently and care-

lessly failed to warn and notify its employee, Frank Le-Clerch, of the hazards and dangers of coming in contact with said wires; that while deceased, on July 13, 1928, was passing along and through the slope entry and along adjacent to said wires, he came in contact with said wires as a direct result of the negligence and carelessness of defendant; that, because of the negligence of the appellant, the electricity from said wires escaped from said wires and into said Frank LeClerch; that the negligence of appellant was the cause of the death of said Frank LeClerch, and that appellee was thereby damaged.

Appellant filed answer admitting it was a corporation and denying all the other material allegations in the complaint, and pleaded contributory negligence and assumption of risk. The evidence as to the condition of the wires and as to insulation is conflicting; some of the witnesses testifying that the insulation was poor, some places naked, fabric ruffed up and saturated with water. Other witnesses testified that the insulation was perfectly good. After deceased went into the mine to work, his body was found about seventy or eighty feet from the entry, with his head towards the mouth and feet down the slope; he died a little after 4 o'clock. There were three electric wires in the mine along the west side of the slope, the lowest five feet from the ground and two above, six or eight inches apart.

According to the testimony of Dr. Jewell, there was found on deceased a fresh burn on the left orbit, seared brown just like a piece of hot iron would burn; looked like all other electric burns he had seen; had a deep burn on the left shoulder, like a hot iron had been laid on the shoulder, about three inches long and about an inch wide; burn on temple about three inches long and an inch or more wide, were the only marks found. This witness, Dr. Jewell, had studied electricity for twenty-two years and understood its effect on the human system and body; made experiments and knows the effect of electricity upon the body. In his opinion, death was caused by coming in

contact with these wires, saw nothing to indicate that deceased had heart trouble. Deceased was fifty-one years old and appellee was forty-seven years old. They had been married twenty-five years, and had only one child, a daughter, who was twenty-two years old and married. Deceased's health was good, and he had no heart trouble that appellee knew of: He had no burns on head or shoulder before his death; earned fifty or sixty dollars a week and spent fifty or sixty dollars a month on appellee.

A number of witnesses for appellant, including some members of the coroner's jury, testified that they found no naked places on the wires, and that they appeared to be in good condition; that the insulation appeared to be fairly good. Some of them stated that they did not think a man could go along and fall and get killed where deceased was found. They testified also that the wires were the same as used in other mines. Some of the appellant's witnesses also testified in substance that there was a little scar on deceased's head and a burned place on his shoulder. They ran their hands over the wire without any injury or shock; that they did not find any place where deceased could have been hurt on the wire. Some of these witnesses, however, admitted that the insulation was a little frizzly around the wire. The wires were three years old. It was shown by one of appellant's witnesses that a fuse had blown out about the time they found the body; that there was a little noise or flash. After this fuse blew out he found the body, found the man was dead.

The testimony was conflicting on all material points, and no useful purpose could be served by setting it out at length.

The appellant contends that the court erred in not granting it a new trial and in permitting a verdict to stand against the weight of the evidence and physical facts, but a sufficient answer to this is that there was ample testimony to make the negligence of the appellant

a question for the jury, whose province it is to pass upon the credibility of witnesses and the weight to be given their testimony.

It is next contended that the court erred in not permitting appellant to put on all the members of the coroner's jury. The court said: "Don't call any more coroner's jury to show the same thing. You have had a number of the members of the jury. If you have anything new, I will permit it. If it is the same thing, it just takes the time of the jury." However, appellant did not make any objection to this statement of the court at the time, and did not state what he expected to prove by any other witnesses he wished to put on. The court had already permitted six of the coroner's jury to testify.

After the statement by the court, the appellant continued with the examination of the witness he had just called, and did not call any other witness and did not offer any other evidence but acquiesced, without objection, in the ruling of the court. This objection cannot be considered by this court for further reason that it was not made one of the grounds of appellant's motion for new trial. A question not raised in appellant's motion for new trial will not be considered on appeal. *United Order of Good Samaritans* v. *Anderson*, 171 Ark. 1033, 287 S. W. 194; *Welch Stove & Mercantile Co.* v. *Burris,* 165 Ark. 556, 265 S. W. 68; *Jones* v. *Fowler,* 171 Ark. 594, 285 S. W. 363; *Pierce* v. *Secard,* 176 Ark. 511, 3 S. W. (2d) 337; *Presley* v. *Actus Coal Co.,* 172 Ark. 498, 289 S. W. 474; *Miller Rubber Co.* v. *Brewster-Stevens Service Station,* 171 Ark. 1179, 287 S. W. 577; *Myers* v. *Andre,* 161 Ark. 393, 256 S. W. 363; *Battle* v. *Draper,* 149 Ark. 55, 231 S. W. 869.

Appellant's next contention is that the case should be reversed because the court gave its preliminary instruction or statement to the jury. This simply stated the issues, and we do not think the statement was improper. It is contended that, as no one saw the death, the jury had to guess how it happened. We do not agree with

appellant in this contention. A number of witnesses testified as to defective wires and poor insulation and testified that there were burns on the body. In addition to the testimony of these witnesses, Dr. Jewell, the county health officer, testified that in his judgment his death was caused by coming in contact with wires. The undisputed evidence shows that Dr. Jewell had had considerable experience and was qualified to testify as to the effect of coming in contact with the wire. The cause of death was a jury question, and there was substantial evidence to support the verdict.

It is finally insisted that the case should be reversed on the ground that the plaintiff was not the proper party to sue, and that she had no right under the law to maintain this action. This question was not raised in the court below, and was not made one of the grounds for new trial in the motion for new trial. Appellant calls attention to and relies on the following authorities. *Railway* v. *Hutchinson,* 101 Ark. 424, 142 S. W. 527; *Jenkins* v. *Midland Valley Rd. Co.,* 134 Ark. 1, 203 S. W. 1; *Railway* v. *Henrie,* 87 Ark. 443, 112 S. W. 967; *Railway* v. *Sweet,* 63 Ark. 563, 40 S. W. 463; *Alko Nak Coal Co.* v. *Barton,* 88 Okla. 212, 212 Pac. 591; *M. K. & T. Ry. Co.* v. *Perino,* 89 Okla. 136, 214 S. W. 907; and *Sanders* v. *Ry. Co.,* 66 Okla. 313, 169 S. W. 891. In the first case cited the court said: ''The proof shows that no personal representative had been appointed, and that all the heirs of the deceased were parties which supplied any defects in the averments of the complaint, and such suit could be maintained by them.'' In the next case relied on, the trial court sustained a demurrer to the complaint, and this court said that was right. If this question had been raised in this case in the court below it would doubtless have been properly settled by that court. In the next case, *Ry. Co.* v. *Henrie,* the evidence did not show that there was no personal representative, and the court, after stating that, while the evidence did not expressly negative the facts contended for by appellant, it did so by

fair implication, and said: "Aside from a formal denial in the answer of the allegations of the complaint concerning administration and next of kin, appellant does not appear to have insisted on the question until the case reached this court." The case of *Ry. Co.* v. *Sweet,* relied on, does not decide the question here involved. The court said: "But they were instituted to recover different damages, and neither is a bar to the other." In each of the Oklahoma cases referred to the question was raised by demurrer in the trial court. In the instant case there was no demurrer, and no objection on the ground that the plaintiff did not have the legal capacity to sue. Our statute expressly provides that: "The defendant may demur to the complaint where it appears on its face that the plaintiff has not legal capacity to sue." C. & M. Digest, § 1189.

Our statute also provides that: "When any of the matters enumerated in § 1189 do not appear upon the face of the complaint, the objections may be taken by answer. If no such objection is taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, except only the objection to the jurisdiction of the court over the subject of the action, and the objection that the complaint does not state facts sufficient to constitute a cause of action." C. & M. Digest, § 1192.

The appellant, at the close of appellee's testimony, made the following motion: "The defendant moves the court for an instructed verdict for the reason that the plaintiff has shown no act of negligence on the part of the defendant that would have or could have caused the death of the deceased." At no time was it suggested that the plaintiff was not the proper party to sue. The objection that plaintiff did not have legal capacity to sue must be made in the manner provided in the statute. *Murphy* v. *Myar,* 95 Ark. 33, 128 S. W. 359; *Love* v. *Cahn,* 93 Ark. 215, 124 S. W. 259; *Ry. Co.* v. *Watson,* 97 Ark. 560, 134 S. W. 949; *Texarkana Gas & Elec. Co.* v. *Orr,* 59 Ark. 215, 27 S. W. 66. The evidence in the instant case shows

that the daughter was made a party, that she is the only heir of the deceased, that she is married and 22 years of age. The undisputed proof shows that she was not receiving any contribution from her father, and at the close of the evidence the court directed a verdict in favor of the defendant as to the daughter. The undisputed evidence shows that appellee was the only person entitled to recover for the death of the deceased, and both parties asked and the court gave instructions to the jury, limiting her recovery to the amount of her pecuniary loss as shown by the evidence.

We find no error, and the judgment is affirmed.