**ALKO-NAK COAL CO. v. BARTON et al.**

No. 12225—Opinion Filed Sept. 19, 1922.

Rehearing Denied Feb. 13, 1923.

(Syllabus.)

1. **Death—Action for Wrongful Death—By Whom Action Brought—Petition—Demurrer.**

Under section 5282, Revised Laws 1910, the surviving widow of a resident deceased

husband whose death was occasioned by the wrongful act or omission of any person, or corporation, may maintain an action for damages, and where the petition of the plaintiff alleges that no personal representative has been appointed by the county court of the county of which the decedent was a resident on the date of his death, such court being the only court having jurisdiction to appoint an administrator of such decendent's estate within the state, held, that a demurrer to the petition upon the ground that the petition failed to allege that no personal representative had been appointed within the state of Oklahoma was properly overruled.

**2. Same — Right of Widow to Sue — Evidence.**

Record examined, and held, that the evidence was sufficient to show that no personal representative had been appointed for the estate of the deceased.

**3. Master and Servant—Action for Death of Servant — Issues—Contributory Negligence and Assumption of Risk.**

In and action to recover damages for the wrongful death of the plaintiff's decedent, where it appears from the evidence adduced in the trial of the cause that the death of the decedent occurred while working in a strip-pit mine, taking up rails and ties from behind a steam shovel, moving said rails and ties to the front of said shovel for the purpose of bedding up the track over which said shovel was operated, and that said decedent in going from behind said shovel to the front ordinarily walked on the track used by the defendant coal company in operating its coal train in transporting the coal to the tipple where said coal was unloaded, and the deceased was struck in the back by said coal train, and the plaintiff only relied upon acts of negligence of the defendant in operating said train to establish her cause of action, and the defendant tendered an issue as to whether the deceased was guilty of contributory negligence in carelessly going upon the track of the defendant when the train was approaching, and such defense was submitted to the jury under proper instructions, held, it was not error not to submit an issue tendered by the defendant as to whether the deceased voluntarily assumed the risk.

**4. Appeal and Error—Harmless Error—Admission of Evidence.**

Record examined, and held, under section 6005, Revised Laws 1910, any error committed in the admission of testimony was harmless.

Error from Superior Court, Okmulgee County; H. R. Christopher, Judge.

Action by Margaret Barton, Nova Barton, Edna Barton, and Neva Barton, against the Alko-Nak Coal Company, a corporation, to recover damages for the wrongful death of George W. Barton. Judgment for the plaintiffs for $5,000, and defendant brings error. Affirmed.

Simpson, Hummer & Foster (Con Murphy, of counsel), for plaintiff in error.

W. T. Banks, James Hepburn, and Barclay Morgan, for defendants in error.

KENNAMER, J. Margaret Barton, widow of George W. Barton, deceased, for herself and as next friend for her minor children, Nova Barton and Edna Barton, and Neva Barton, adult dependent daughter of deceased, as plaintiffs, commenced this action in the superior court of Okmulgee county, Henryetta division, against the Alko-Nak Coal Company, a corporation, defendant, to recover $40,000 damages for the alleged wrongful death of George W. Barton, deceased.

The petition alleged and the evidence in the trial of the case established, in substance, the following facts:

That the defendant company on the 19th day of March, 1920, was engaged in mining coal near Henryetta, Okmulgee county, Okla., in a mine known as the Alko-Nak strip pit, and that George W. Barton on said date was employed by said company as one of the two tracklayers for the big steam shovel that was used by said company in mining coal in the strip pit. That said strip pit of the defendant company was at the time about 60 feet wide from east to west and 500 yards long from the north end to the south end. That on the date of the accident, March 19, 1920, in which George W. Barton was killed, the steam shovel was anchored on the west side of the cut, about 400 yards south of the tipple, said shovel being headed north. That George W. Barton was taking up rails and ties from behind the steam shovel and moving them around to the front to bed up the track for said shovel to run on. That it was the duty of George W. Barton to carry and put down the rails and his part of the ties on the east side of the cut, and on the east side of the anchored steam shovel; that in doing this work he would take a tie in his arms and walk around from behind the anchored steam shovel to the front end of it, and in going from behind the shovel to the front of the same he had to walk on the track used by the small locomotive engine, known as the "dinkey engine", which was used in hauling the cars of coal. That there was no room between the track used in moving

the coal cars and the anchored steam shovel for a man to stand, move, or work without getting on the track used by the coal train. It appears that on the date of the accident George W. Barton was walking from behind the steam shovel with a tie in his arms going to the front of the steam shovel, when a string of loaded coal cars were pushed down the track north and struck George W. Barton in the back, knocking him down, three of said loaded cars passing over his body cutting off and crushing both of his legs, from which injuries Barton died in a few minutes.

The specific acts of negligence alleged by the plaintiffs in their petition charged the defendant company with operating said coal train in a negligent manner in pushing said train of cars down the track, where defendant company knew the employes were working along the track, without any lookout on said cars or the end car, and in employing an incompetent and unlicensed engineer to operate said "dinkey engine", and that the incompetency of said engineer was known, or could have been known, by the defendant. That said engineer was negligent in not keeping a lookout for workmen along the track and in not having signaled such workmen of the approach of the train, and in not having slowed the speed of said train until the deceased could get out of the way. That such acts of negligence were the proximate cause of the death of George W. Barton, deceased.

The petition of the plaintiffs alleged that they were all residents of Henryetta, Okmulgee county, Okla., and that no personal legal representative or administrator of the estate of the deceased had been appointed by the county court of Okmulgee county, Okla.

The defendant company filed a general demurrer to the petition of the plaintiffs, which was by the court overruled and exceptions allowed. Thereafter the defendant company filed an answer, denying generally the allegations of the plaintiffs' petition, pleading contributory negligence and assumption of risk.

The plaintiffs filed reply, in substance, a general denial to defendant's answer.

The cause was tried on the 5th day of October, 1920, before a jury, and after the introduction of the evidence by the plaintiffs, defendant filed a general demurrer to the evidence introduced in support of the plaintiffs' cause of action, which demurrer was overruled and exceptions allowed.

Defendant introduced its evidence, and after the court had instructed the jury as to the law of the case, the jury returned a verdict in favor of the plaintiffs in the sum of $5,000. Motion for new trial was filed and overruled, and this appeal is prosecuted by the defendant to reverse the judgment of the trial court.

Numerous errors have been assigned as grounds for reversal of the judgment. The first proposition argued by counsel for the defendant company is that there is no allegation in the petition nor proof in the record that no administrator of the estate of George W. Barton, deceased, had been appointed. We are unable to agree with counsel for defendant in this contention. If the contention of counsel for the defendant is true that the petition of the plaintiffs failed to allege that no administrator had been appointed for the estate of George W. Barton, deceased, and that no proof was offered in support of such allegation, then it necessarily follows that the trial court erred in overruling the defendant's demurrer to the petition and the demurrer to the plaintiffs' evidence. The petition specifically alleged that the plaintiffs were residents of Okmulgee county and that no legal representative or administrator of the estate of George W. Barton, deceased, had been appointed by the county court of Okmulgee county, and counsel for the defendant in the trial of the case admitted that no appointment had been made by the county court of Okmulgee county. It is true that the allegations of the petition and the proof as to the residence and appointment of an administrator should have been more definite and certain. The better practice is as to these statutory requirements, that the allegations of the petition be definite and certain, and that evidence to that effect be introduced directly establishing such facts. But an examination of this entire record makes it apparent that for a long time prior to the death of George W. Barton he had been working for the defendant company in Okmulgee county, and the evidence shows that he resided in said county with his family, consisting of his wife and children, plaintiffs in this action. It is obvious, being a resident of Okmulgee county on the date of his death, that the only court that had jurisdiction to appoint an administrator of his estate was the county court of Okmulgee county, which counsel for the defendant admit never made any such appointment.

We are of the opinion that the allegations of the petition and the evidence intro-

duced in the trial of the cause established a substantial compliance with section 5282, Revised Laws 1910, authorizing the plaintiffs to bring this action where no personal representative of the deceased has been appointed in the state. The contention of counsel for the defendant is highly technical in that it is not even suggested that there in fact was an administrator of the estate of the deceased. In fact, counsel for the defendant assert in their argument under their second proposition that the mine situated in Okmulgee county, in which the deceased had been working, had been operated since May, 13, 1917, and that the deceased had been working in said mine since that date. The only reasonable inference to be drawn from all the evidence is that the deceased was on the date of his death a resident of Okmulgee county.

The second proposition argued by counsel for the defendant for reversal of the judgment of the trial court is that the trial court committed reversible error in refusing to submit to the jury under proper instruction the defense of assumed risk as pleaded by the defendant. We have carefully examined the testimony introduced in the trial of this cause and the allegations of the plaintiffs' petition and the defendant's answer, and, upon careful consideration of the same, it is quite clear that there existed no issue for submission to the jury of assumption of risk. The negligence charged in the petition and finally supported by the evidence adduced on behalf of the plaintiffs, relied upon by the plaintiffs to make a prima facie case against the defendant, related only to the manner and method of operating the train used in loading and unloading the coal which was being mined. The evidence introduced by the plaintiffs tends to show that the train, consisting of ten or twelve cars of coal, was pushed down the track where the deceased was working and he was run over by reason of the engineer negligently operating said train, in not giving to the deceased a timely signal or warning of the approach of the train.

The court by instruction No. 4 submitted to the jury the issue of contributory negligence, and said instruction fairly and fully advised the jury that, if the deceased's own negligence, combined and concurring with that of the defendant's negligence, contributed to the injury as a proximate cause thereof and as an element without which the injury would not have occurred, the plaintiffs would not be entitled to recover.

In instruction No. 6 the trial court advised the jury that, if by a fair preponderance of the evidence introduced by the plaintiffs they had established a prima facie case of negligence against the defendant, as a matter of law the burden of proof on the question of contibutory negligence and assumption of risk was upon the defendant, and that said defendant must specifically prove the acts constituting contributory negligence or assumption of risk.

The trial court in its statement of the issues to the jury fully and fairly stated the issues as made by the pleadings, and, while the court in instruction No 6 failed to definitely advise the jury as to what constitutes assumption of risk, it must be borne in mind that he had in his statement of the issues to the jury advised the jury as to what facts the defendant had pleaded in its answer, raising the question of assumption of risk, and by said instruction advised the jury that, unless the defendant, by a preponderance of the evidence, established its defense of contributory negligence and assumption of risk, such defense would fail. It is quite clear that the defense of assumption of risk under instruction No. 6 was not submitted to the jury in the clear and definite manner that such defense should be submitted where the issue is properly raised. But, in view of the fact that the plaintiffs did not seek to recover upon the ground of any negligence on the part of the defendant occasioned by defects in any of the machinery with which the deceased was working, or by reason of any unsafe conditions of the place in which the deceased was working, but only upon the ground of primary negligence of the defendant in operating its train, which struck the deceased, it is quite clear that the defense of assumption of risk was not an issue in the case. Ordinarily assumption of risk is based upon intelligent acquiescence in a known danger and the appreciation of such risk usually incident to the employment in which the employe is engaged. It relates to the acquiescence of an ordinarily prudent man in engaging in the work of the employer where the danger and risk incident to such work is assumed under the express or implied terms of the contract of employment.

In many cases where assumption of risk is the issue acknowledgement of the defective conditions and acquiescence therein is held to be fatal. The fundamental distinction between assumption of risk and contributory negligence is that the former relates to the recognition and acquiescence of

the employe of a condition existing under which he undertakes or continues to labor, while the latter relates to his conduct, and in most cases the distinction between the two defenses under the existing facts is quite apparent. Choctaw, O. & G. R. Co. v. McDade, 191 U. S. 64, 48 L. Ed. 96, 24 Sup. Ct. Rep. 24; Schlemer v. Buffalo, etc., R. Co., 205 U. S. 12, 51 L. Ed. 681, 27 Sup. Ct. Rep. 407; Narramore v. Cleveland, etc., R. Co., 96 Fed. 304, 48 L. R. A. 68; Miller v. White-Bronze Monument Co., 141 Iowa, 701, 18 Am. & Eng. Ann. Cases, 957; Mundle v. Hill Mfg. Co., 86 Me. 405, 30 Atl. 16; Ball v. Gussenhoven, 29 Mont. 321, 74 Pac. 871; Folley v. Pioneer Min., etc., Co., 144 Ala. 178, 40 South. 273; St. Louis Cordage Co. v. Miller, 126 Fed. 503, 61 C. C. A. 485, 63 L. R. A. 551.

Quite a few authorities have announced the doctrine that under a certain state of facts the defenses of assumption of risk and contributory negligence are so closely allied that it is often very difficult to draw the line of demarcation between them. Brady v. Kansas City, St. L. & C. R. Co., 206 Mo. 528, 102 S. W. 983, 105 S. W. 1195; Rase v. Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. (Minn.) 120 N. W. 360, 21 L. R. A. (NS) 138, at page 147; Nadau v. White River Lbr. Co., 76 Wis. 120, 43 N. W. 1135, 20 Am. St. Rep. 29; Southern P. Co. v. Yeargin, 48 C. C. A. 497, 109 Fed. 436.

It appears that the authorities with almost unanimity recognize some distinction between the two defenses, but many of the authorities disagree as to the exact nature of the distinction.

In the case of Narramore v. Cleveland, etc., R. Co., supra, Mr. Justice Taft pointed out that many cases seem to confuse the two defenses. Many authorities support the view that although the distinction between the two defenses is essential and apparent, they are often obscured and confused by the courts when the essential difference should be kept clearly in mind in order to a correct understanding of the respective rights and duties of the master and servant. Dempsey v. Sawyer, 95 Me. 298, 49 Atl. 1036; Bradburn v. Wabash Ry. Co., 134 Mich. 575, 96 N. W. 929.

In the prevailing opinion in Southern P. Co. v. Yeargin, supra, and the dissenting opinion in St. Louis Cordage Co. v. Miller, supra, by Judge Thayer, while recognizing the distinction between the two defenses, he stated that he did not regard the question whether contributory negligence and assumption of risk are identical or different defenses as of much practical importance—

"That is rather a question for the schoolmen. It matters very little whether we say of a servant who has used a defective tool or appliance which the master has supplied, with a full knowledge of the defect and a full appreciation of the danger incident to its use, that such servant is as much at fault as the master, and is guilty of contributory negligence, or whether we say that he has agreed to assume the risk, and absolve the master from liability. The result, as respects the master's liability, is the same in whatever way we may choose to designate the defense."

In 18 R. C. L., sec. 165, the defenses of assumption of risk and contributory negligence are discussed as follows:

"During the earlier years of its existence the doctrine of assumption of risk was accepted without much examination into its fundamentals or its relation to other subjects. In recent times, however, perhaps owing to the doubts that economic changes have cast upon its expediency, the doctrine has been subjected to much careful examination and criticism. In particular the courts have devoted themselves to a consideration of its relation to negligence and contributory negligence; and it has been almost uniformly concluded that a denial of recovery on the score of negligence on the part of the employe proceeds upon a different principle than a refusal of compensation based on assumption of risk, or, in other words, that assumption of risk and contributory negligence are distinct and different defenses. At the same time the courts assert that both defenses may be available under the same state of facts, and, indeed, in the same case. But it is declared that the two principles rest upon different grounds—that assumption of risk rests in contract or upon the principle expressed by the maxim volenti non fit injuria, whereas contributory negligence rests in tort or an omission of duty; and, according to some courts, a distinction exists in respect of the imminency of the peril. It is generally agreed that assumption of risk may be a defense in cases where there is no contributory negligence, and where more than ordinary care has been exercised by the employe. Such has been the general trend. It is sufficiently certain, however, and is becoming generally recognized, that attempted distinctions between these two principles are metaphysical, not practical. The language of many of the opinions discloses that the term 'assumption of risk' imports only that no duty rests upon the employer—that he has not been negligent. In every case, regardless of the particular phrase employed to embody the concept, it is the superior knowledge of the employe that is held to bar a recovery. The gist of the employer's defense, whether termed 'contributory negligence' or 'assumption of risk,' consists in 'conduct which common experience or the special knowledge of the actor shows to be so likely to produce the result

complained of under the circumstances known to the actor, that he is held answerable for that result.' Nor is there an utter lack of direct authority in support of this view. Eminent courts and publicists have regarded the doctrines of assumption of risk and contributory negligence as nothing more than different names for the same thing."

In the case of Rittenhouse v. Wilmington St. Ry. Co. (N. C.) 26 S. E. 922. Mr. Justice Clark, in delivering the opinion of the court said:

"We do not think it was error to refuse to submit the fourth issue tendered by the defendant. It is true that in strict parlance, and logically, there is a distinction between contributory negligence of the intestate and his voluntarily taking a risk which he knew to be dangerous. 'Carelessness is not the same thing as intelligent choice,' and most respectable authorities have pointed out the distinction. Bowen L. J., in Thomas v. Quartermaine, 18 Q. B. Div. 685, 697; Minor v. Railroad Co., 153 Mass. 398, 26 N. E. 994. But upon the issue of 'contributory negligence' both phases of the matter, negligence and voluntary assumption of risk, could be submitted to the jury, and the charge shows that the judge did so submit this case. The defendant was not cut off from presenting any phase of its defense, and it can serve no good purpose to more minutely divide the issues. Humphrey v. Trustees, 109 N. C. 132, 13 S. E. 793; Denmark v. Railroad Co., 107 N. C. 187, 12 S. E. 54. It would rather serve to confuse the jury. The jury readily comprehend that by the issue of contributory negligence they are asked to find whether the plaintiff's fault was the proximate cause of his injury, and it is immaterial whether that fault was carelessness or a reckless assumption of risk, provided the jury are given to understand (as they were in this case by the evidence, the argument of counsel, the prayers for instruction, and the charge of the court), that the issue was broad enough to cover both phases. 'Reckless assumption of risk' has always been taken in our courts as being embraced in the issue of contributory negligence. Burgin v. Railroad Co., 115 N. C. 673. 20 S. E. 473; Doster v. Railroad Co., 117 N. C. 651, 23 S. E. 449; Turner v. Lumber Co., 119 N. C. 687, 26 S. E. 23. No harm has come from this course, and there is no need of further refinement."

So, we conclude, after a careful consideration of many authorities, that in the instant case it is not of much practical importance as to whether or not one designates the conduct of the deceased as an assumption of the risk or contributory negligence. That the entire controversy between the plaintiffs and the defendant determined by the jury was whether it was the fault of the master or that of the deceased that was the proximate cause of the injury to the employe causing his death. The decisive test in the case as to the liability of the defendant was: First, did the plaintiffs, under the evidence adduced, establish that the defendant was guilty of primary negligence? Second, whether the employe, by reason of his negligent conduct, contributed to his own injury, without which the injury would not have occurred. Concisely stated, the issue was, Whose fault was the proximate cause of the injury?

The defendant's answer charged that the said George W. Barton was guilty of contributory negligence in that he negligently and carelessly walked upon the railroad track being used by the defendant to move its coal cars over, and knowing that the trains of the defendant frequently passed over said track, without taking proper precautions to see whether or not a train was approaching.

The fourth paragraph of the defendant's answer alleged that George W. Barton had been advised of the risk and dangers incident to his employment and he understood and assumed the risk, for the same were obvious and open to observation. There is no controversy in this case, under the undisputed testimony and the pleadings, as to the train of the defendant company being obvious to the view of the employes. The defendant, however, only occasionally ran a train over the track and along where the employes were working with the steam shovel near and about the track. The train was not constantly present at the place where the injured employe received his injury. It was only by the moving of the train down the track at and near where the injured employe was working that any danger arose to the employes who were working in the usual manner along and near said track.

The evidence is uncontradicted to the effect that at the time George W. Barton was injured he was performing his labor in the usual, customary manner by which such work had been done for the past three years. and it is quite obvious that the defendant was guilty of primary negligence if the jury believed from the testimony, which they had a right to do, that the train was negligently and carelessly pushed against the deceased while he had his back to the approaching train, without giving him any timely warning of its approach. As the plaintiffs neither pleaded nor relied upon any defects in the machinery or conditions of the premises where the deceased was working on the date of his injury, the defense of assumption of risk has no place in the case.

The defendant's counsel do not contend that it was an ordinary incident to the work in which the injured employe was engaged for the defendant to injure or kill an employe in the manner in which George W. Barton lost his life on the date of the accident. But it is quite apparent that the killing of an employe in the manner in which Barton was killed was an extraordinary or unusual event. The question as to whether the deceased acted negligently in going upon the track as he did not observing the approach of the train raised the issue of his contributory negligence, and the same was properly submitted to the jury under the instructions. The jury having found the issues in favor of the plaintiffs, and their verdict being supported by sufficient evidence, the same should not be disturbed.

While a person ordinarily voluntarily entering in the service of another assumes all of the risk and hazards incident to the employment which are liable to arise from defects which are obvious to a person of his experience and understanding, he does not, however, assume risk arising out of the negligence of the master. Coalgate Co. v. Hurst, 25 Okla. 588, 107 Pac. 657; McCabe & Steen Construction Co. v. Wilson, 17 Okla. 355, 87 Pac. 320; Frederick Cotton Oil & Mfg. Co. v. Traver, 36 Okla. 717, 129 Pac. 747; Chicago, R. I. & P. Ry. Co. et al v. Ward, 68 Oklahoma, 173 Pac. 212.

Where the risk is the result of the master's failure to properly discharge his duty to the servant, it is not a risk incident to the employment. Cherokee & P. Coal & Min. Co. v. Britton, 3 Kan. App. 292, 45 Pac. 100.

According to the trend of modern decisions, the servant does not assume extraordinary and unusual risk of employment and such risk that would not have existed but for the negligence of the master. The risks assumed by the servant are only such risks as exist after the master had done everything he is bound to do in order to secure the safety of his servants. N. Y., New Haven & Hartford R. R. Co. v. Vizvari, 126 C. C. A. 632, 210 Fed. 118, L. R. A. 1915C, pages 9-12; 3 Labatt, Mast. and S., secs. 893, 894.

In the case of Noyes v. Smith, 28 Vt. 59, 65 Am. Dec. 222, the Supreme Court of Vermont said:

"It is only such injuries as have arisen after the exercise of that diligence and care on the part of the master that can properly be termed accidents or casualties, which the servant has impliedly agreed to risk, and for which the master is not liable."

We are unable to conceive of any theory upon which George W. Barton may be said to have assumed the danger to his life occasioned by the defendant negligently operating its train along the track where he was performing his work in the customary manner. He could be negligent in being upon the track, which under the evidence was a question for the jury. Until the train was pushed down the track, where he was working, he was in absolutely no danger of the train, and the case necessarily must turn upon the question of negligence in the operation of the train or his negligence in failing to observe its approach.

The third proposition argued by counsel presents error of the court in admitting incompetent, irrelevant, and immaterial testimony. The court permitted one of the witnesses for plaintiffs to testify over objections that the cars of the train were not equipped with brakes. Counsel in support of their contention cite the case of Mo., O. & G. Ry. Co. v. Adamson, 52 Okla. 557, 153 Pac. 200, where the rule is announced that, if the petition avers specific acts of negligence, evidence tending to prove other acts not embraced in the acts charged is inadmissible. We have no fault to find with the rule, but it appears from the record in this case that not much importance was attached to the answer made by the witness, and in instructing the jury the trial court very clearly directed the jury's attention to the allegations of negligence relied upon by the plaintiffs. In this situation, under section 6005, Revised Laws 1910, we conclude we would not be warranted in reversing the case for such error. The statute specifically provides that:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

The fourth proposition argued by the defendant for reversal raises the question of the sufficiency of the evidence to make a prima facie case in favor of the plaintiffs. We deem it sufficient to say that, in view of our conclusion upon the other errors complained of, there is no merit in this conten-

tion, and that the judgment of the trial court should be, and the same is, affirmed.

HARRISON, C. J., and KANE, JOHNSON, and NICHOLSON, JJ., concur.