ST. LOUIS-SAN FRANCISCO RY. CO et al. v. CAUTHEN.

No. 13716—Opinion Filed Sept. 16, 1924.

On Rehearing April 21, 1925.

Second Rehearing Denied Nov. 17, 1925.

**1. Negligence—Question for Jury.**

In cases involving negligence, when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence is ever considered one of law for the court.

**2. Appeal and Error—Insufficiency of Instructions—Necessity for Requests.**

The rule is fairly established that where the charge of the court does not cover all phases of the case, counsel is bound to call its attention to the omission by an appropriate request or be precluded from making such failure available as reversible error.

**3. Release—Damages for Personal Injuries —Rescission for Mistake.**

Mutual mistake of fact should justify the rescission of a release executed under the belief that injuries are trivial and temporary, when as a matter of fact they are serious and permanent in their nature, where it appears that the purpose of the release was to compensate for apparent injuries, known injuries, and that serious or permanent injuries were not contemplated by the parties at the time of the execution of the agreement or release, although in its terms the agreement or release is broad enough to cover all injuries resulting from the particular incident.

**4. Trial—Argument—Discussion of Incompetent Evidence Admitted Without Objection.**

Where incompetent evidence is admitted on the trial of the case, to which no exceptions are taken and no motion to strike made, the fact that counsel calls the attention of the jury to such evidence in his argument is not such error as will justify a reversal of the case.

**5. Trial — Instructions — Sufficiency as a Whole.**

All of the instructions given by the court should be considered together and in their entirety, and when so considered, if they state the law correctly and, without conflict, it is sufficient, although one or more, standing alone, might be incomplete.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Garfield County: James B. Cullison, Judge.

Action by R. L. Cauthen against the St. Louis-San Francisco Railway Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

W. F. Evans, Stuart, Sharp & Cruce, and Ben Franklin, for plaintiffs in error.

Simons, McKnight & Simons, for defendant in error.

Opinion by JONES, C. This action was instituted in the district court of Garfield county, Okla., on the 20th day of May, 1921, by the plaintiff, R. L. Cauthen, appellee, against the St. Louis-San Francisco Railway Company, A. J. Anson, and R. Aaron, defendants in the trial court and appellants herein, to recover damages in the sum of $50,000 for personal injuries sustained by the plaintiff while in the employment of the defendant railway company as a head brakeman on a freight train. And that while in the discharge of his duties as a brakeman on the train, in the city of Perry, Okla., he sustained the injuries here complained of. Plaintiff alleges that while standing on the gangway, or space between the tender and the caboose of the engine, with his back to the tender and his right foot on the platform or floor of the cab of said engine, that said cab, or engine, and tender buckled, or dipped together, which was caused by a defective roadbed; that said roadbed had given way and that a joint or where the rails connected there was a sag or hole in said roadbed, and that by reason of same the engine and tender dipped together, and that he was caught between said tender and engine and his right knee was forced through the wall of the cab, and that his right hip joint was

dislocated and seriously injured, and alleges the condition and results thereof to have been caused by the negligence and carelessness of the defendants in maintaining said track and roadbed.

The defendants answer and generally deny all of the allegations contained in plaintiff's petition, and further answering aver that the injuries complained of were the result of the negligence contributed by the plaintiff, and without which the injuries alleged to have been sustained would not have occurred, and that the injuries received were the result of one of the dangers incident to the operation of said engine, and incident to the employment in which plaintiff was engaged, and that plaintiff assumed all the risk incident to and arising from the operations of trains and engines on which plaintiff might be placed, and further answering avers that on the 24th day of July, 1920, plaintiff and defendant railway company entered into an agreement by the terms of which the defendant railway company paid the plaintiff the sum of $800, which was accepted in full and complete satisfaction of all claims that the plaintiff might have for damages, etc.

The plaintiff filed his reply and denied all of the allegations and matters contained in defendants' answer except such as are admitted. Plaintiff admits the contract or agreement referred to in defendants' answer, but alleges same to be null and void, and that same does not operate, or have the effect of releasing the said defendants from plaintiff's cause of action, for the reason that said release was obtained by said defendant from the plaintiff by fraud perpetrated by the said defendant upon the said plaintiff, and further for the reason that said release was executed under a mutual mistake of fact between the plaintiff and the defendant, and further replying, in substance, says that immediately following the injuries complained of, the plaintiff was placed in a hospital at Enid, Okla., where he was under the treatment and care of the doctors and surgeons of the defendant railway company, and within a few days he was sent to a hospital in St. Louis, Mo., where he was thoroughly examined as to his injuries by doctors and surgeons, representing the railway company, and it was discovered that he had sustained a fracture of the acetabulum, and that after several months he was discharged from the hospital and was advised by the surgeon in charge that he would fully recover from the injuries sustained, but admonished not to return to work, and especially any labor which would

require any physical exertion until all soreness had left his hip. That he returned to Enid, Okla., his place of residence, and after a short time entered the employment of the defendant railway company on a passenger run, which seems to have been light work and required no special physical exertion, and that some three or four months thereafter returned to his old job as brakeman on freight train for the reason that the compensation was better, and seems to have encountered no inconvenience or difficulty in performing the labor incumbent upon him as such brakeman until some three or four months thereafter, at which time his hip began to give him some pain, and in the course of some few weeks was forced to give up his position and return to the hospital at St. Louis, Mo., where after several examinations he was advised by the doctors in charge that he was suffering from a process of absorption of the hip, and that the trouble was incurable, and that he was permanently disabled; that he returned home and that he has continued to suffer from the injuries, and his hip joint has become so impaired that his leg is of no use to him, and that he is permanently disabled; and that he is not bound by the agreement or release entered into by the defendant railway company for the reason that both plaintiff and defendant were laboring under a mistake of fact as to the real condition of plaintiff and the seriousness of his injuries at the time the agreement was made, and did not and could not have had in mind nor contemplation the facts and conditions as they existed, and therefore it is not binding.

On the issues thus joined the case was thereafter submitted to a jury, and resulted in a verdict in favor of the plaintiff for $22,275. Defendants filed a motion for a new trial, which was overruled, and judgment rendered by the court in accordance with the verdict of the jury, from which order and judgment of the court the defendants prosecute this appeal, and set forth various specifications of error, but submit the case on six different propositions:

(1) That the verdict of the jury is not supported by sufficient evidence.

(2) That the trial court erred in the failure to instruct the jury on the question of assumption of risk.

(3) That the trial court erred in overruling the demurrers of the defendants to plaintiff's evidence, and in overruling the separate motions of the defendants for an instructed verdict, for the reason that it is shown by all the evidence introduced by

plaintiff and defendants, that plaintiff's injuries were the result of an assumed risk.

(4) That the trial court erred in holding that the settlement between the plaintiff and the railway company regarding plaintiff's injuries pleaded and proven by the defendants, was not a complete bar to plaintiff's recovery.

(5) That the rights of the defendants were prejudiced by the conduct of plaintiff's counsel in the argument to the jury by continually referring to the repairs made by the railway company immediately subsequent to the accident, and the court in admitting evidence in regard to said repairs.

(6) That the trial court erred in his instructions to the jury.

In the first proposition appellants contend that the evidence was wholly insufficient to establish the allegations of negligence on the part of plaintiff, and cite many authorities in support of their contention, but base same on the theory that the injury complained of was the result of and caused by the tender and engine coming together by reason of the curve in the track, and not by reason of any defect of the track or roadbed; some of the witnesses testified that at the time the injury occurred the engine was going on the main line of the track, and that the connection of the two tracks constituted a reverse curve, and as the engine would turn to the left on the side track preparatory to coming on the main line, the engine and tender would come closer together on the left hand side, and as the engine passed onto the main line, the engine and tender would come closer together on the right hand side, and by reason of the position occupied by the plaintiff, that he received the injuries as a natural result of the position of the engine and tender in making the curve; that it was a risk well known to the plaintiff and assumed by him when he took the position in which he placed his knee upon the wall of the cab with his back to the tender, in which position the appellant contends he received the injuries complained of, and had this condition or fact been admitted or clearly proved beyond doubt, we would readily assent to the contention of the appellants; but from an examination of the record, we find that there is a sharp conflict in the evidence on this point, and as to the manner in which the injuries occurred. Plaintiff alleges and contends that the injury was the result of a dipping together or buckling of the engine and tender, caused by a sag or low place in the roadbed, which caused the engine and tender to drop, buckle together and suddenly forced his knee through

the wall of the cab on the rear of the engine, resulting in the injury complained of, and this being a question of fact and submitted to the jury under proper instructions, the verdict of the jury is conclusive, and under a long line of authorities in this jurisdiction should not be disturbed on appeal in so far as this question is concerned.

Appellee, in support of his contention that the evidence is sufficient to establish negligence on the part of the appellants, cites the case of Texas & Pacific Railway Co. v. Carlin, 189 U. S. 354, 47 Law Ed. 849, which is a case wherein the plaintiff was employed as a workman on a bridge gang, and a spike mall was left on the bridge by some of the employes at the time when a train was approaching, and the workman left the bridge for the purpose of letting the train pass; the wheels of the engine or cars struck the spike mall, breaking the handle off, and threw the mall against the plaintiff, one of the employes, with such force as to break his leg, necessitating an amputation of same, and the court held that the leaving of the mall on the bridge constituted negligence, and that the company was liable, and from that opinion, we quote the following:

"Upon the second ground, we are of opinion that there was evidence sufficient to go to the jury upon the question of the negligence of the foreman in failing to discover the mall upon the bridge immediately prior to the passage of the train. The foreman swears that he did look along the track just prior to the coming of the train and that he did not see an obstruction on the track and did not see the spike mall in question. Whether he looked or not is under the evidence, one of the material facts in the case. He says that he did but we are of opinion that other facts proved in the case were of such character as to make it proper to submit the question to the jury. The foreman's evidence was that of a somewhat interested witness. If the foreman did in fact neglect to perform his duty by looking over the track just prior to the coming of the train for the purpose of seeing that the bridge was clear of obstructions, it might be quite a serious matter for him in his future relations with the company. At any rate, no man is an absolutely disinterested witness where his testimony relates to the question of the performance or nonperformance of a duty which he owed on account of the position which he occupied. It is, therefore, a question for the jury as to what measure of credence should be given to his testimony. * * * But there are certain facts proved in this case which we think render it necessary to submit the question of negligence to the jury notwithstanding the testimony of the foreman.

"The mall being left so that it was struck

by the train and hurled against the plaintiff, failure of the foreman to see it might have been found by the jury to be a negligent failure and it being his duty to see that the track was kept clear for the passage of trains, that failure was a neglect which was the proximate cause of the injury."

Appellate also cites Labatt's Master and Servant (2nd Ed.) vol. 3, p. 2748, wherein the author announces the following rule:

"On the one hand, the master is charged with knowledge that, if he allows the instrumentalities of his business to fall below a certain standard of efficiency, the servants who use or are brought into proximity with them in the course of their employment will probably be injured. He does not conduct himself as a prudent man, therefore, if, in carrying on his business, he fails to take due notice of the fact that machinery and other inanimate appliances, after the lapse of a certain period of time, longer or shorter according to the nature of the material, will certainly deteriorate in quality, as the normal result of wear and tear incident to their use; and that animate appliances undergo a similar deterioration in a sufficient number of cases to render it his duty to conduct his business with a view to the probability that danger will occasionally arise from this cause"

—and cites Davis v. Mercer Lumber Co., 164 Ind. 413, 72 N. E. 889, and Rice v. Dewberry (Tex.) 93 S. W. 715, and many other cases supporting the rule above announced; also cites the case of Chicago, Rock Island & Pacific Railway Company v Rogers, 60 Okla. 249, 159 Pac. 1132, where this court said:

"The fact that an accident is unusual, unexpected or even unheard of will not excuse the negligence which caused it. 26 Cyc. 1092; Doyle v. Chicago, St. Paul & Kansas City Railway Co., 77 Iowa. 607, 42 N. W. 555."

Appellee cites many other authorities in support of his contention in this particular, but we take it that there can be but little controversy as to this question, in the light of the well known rule in this jurisdiction that negligence is a question of fact for the jury, and in this case the jury evidently accepted the theory of the plaintiff to the effect that the injury was the result of a defective roadbed and not the result of the position of the engine and tender by reason of the curve in the track as contended by appellants. The rule has been stated many times by this court as follows:

"In cases involving negligence when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence is ever considered one of law for the court. Where from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence or contributory negligence, such questions are proper for the jury. M., K. & T. Ry. Co. v. Shepherd, 20 Okla. 626, 95 Pac. 243; Harris v. M., K. & T. Ry. Co., 24 Okla. 341, 103 Pac. 758; St. L & S. F. Ry. Co. v. Loftis, 25 Okla. 496, 106 Pac. 824; Sans Bois Coal Co. v. Janeway, 22 Okla. 425, 99 Pac. 153, St. L. & S. F. Ry. Co. v. Copeland, 23 Okla. 837, 102 Pac 104; Mean v. Callison, 28 Okla. 737, 116 Pac. 195."

We think the authorities cited are conclusive, and decisive of the rights of the parties on the question of negligence.

The second proposition urged is that of the failure of the court to instruct the jury on the question of assumption of risk. This question, like the others, is based upon and arises by reason of the different contentions of the parties on the question of negligence, and the manner in which the injury occurred. If the injury was the result of and caused by reason of the curve in the track, then the question of assumption of risk would become material and highly important, but on the other hand if it was the result of the buckling and dipping together of the engine and tender caused by a defect in the roadbed, then it becomes a matter of minor importance, and under the rule as announced in the case of Texas-Pacific Railway Co. v. Carlin, supra, there would be no assumption of risk, and aside from the legal phase of the question, the record discloses that at the time the court was preparing his instructions the following colloquy occurred between the court and counsel:

"Thereupon, the court proceeded with the matter of preparing his instruction to the jury upon the law of the case and at which time counsel for plaintiff tendered to the court instructions requested by the plaintiff and thereupon the court requested counsel for the defendants to submit to the court any instructions desired by the defendants to be given to the jury in said cause.

"Whereupon, counsel for the defendants stated to the court, that the only instruction which they desired to submit to the court was a request for a directed verdict in favor of the defendants."

And while appellant made a general objection to all of the instructions practically, it failed to bring itself within the rule by requesting and submitting an instruction setting forth its views, or theory of the case.

In the case of Moore v. Odell, 27 Okla. 194, 111 Pac. 308, the court said in the body of the opinion:

"As to instruction 'd,' relating to the burden of proof, it states the general rule. Counsel for plaintiff in error appears nowhere to have requested the court to instruct the jury as to what presumption arose from the conveyances as to the terms of the trust having been complied with. Not having made such request, he is not entitled on review here to complain."

In the case of St. L. & S. F. Co. v. Crowell, 33 Okla. 773, 127 Pac. 1063, the second paragraph of the syllabus is:

"Where an instruction is correct as far as it goes, and it is urged by a party that under his theory of the case additional instructions should have been given, a reversal will not be had unless a supplemental instruction is requested · by such contendant embodying such theory."

In the case of C., R. I. & P. v. Radford, 36 Okla. 657, 129 Pac. 834, the court said:

"Where a special instruction is requested, it is the duty of counsel to prepare and submit to the court such desired instruction in writing properly numbered and signed, and upon timely delivery to the court requesting that it be given, upon a failure so to do, where the court has given general instructions applicable to the issues, and the evidence, this court will not consider as error the court's failure to instruct of its own motion upon any given proposition.

"No instruction was asked by defendant upon the question of probable cause for the arrest; hence, even though an instruction had been proper, which we do not undertake to decide, the court's failure to submit such an instruction of its own motion is not ground for reversal. If proper, a requested instruction covering the law desired to be submitted should have been prepared and presented to the court by counsel with its other instructions."

. The same rule is announced in the case of Seay v. Plunkett, 44 Okla. 794, 145 Pac. 496, and Brown v. Motley, 51 Okla. 277, 151 Pac. 1060. In 14 R. C. L. 795, the author lays down the following rule:

"The rule is therefore firmly established that where the charge of the court does not cover all phases of the case, counsel is bound to call its attention to the omission by an appropriate request or be precluded from making such failure available as reversible error."

And many other authorities are cited in support of this rule, and appellee, in support of his contention on the question of assumed risk, among other authorities, cites. Alko-Nak Coal Co. v. Barton et al., 88 Okla. 212, 212 Pac. 591, wherein this court announced the following rule:

"Assumption of risk is based upon the intelligent acquiescence in a known danger and the appreciation of such risk usually incident to the employment and relates to the acquiescence of an ordinarily prudent man in engaging in the work of the employer where the known danger and risk incident to such work is assumed under the express or implied terms of the contract of employment.

"The fundamental distinction between the assumption of risk and contributory negligence is that the former relates to ·the recognition and acquiescence of the employe, of a condition existing under which he undertakes or continues to labor while the latter relates to his conduct."

And under these authorities, we are inclined to the opinion that the question of assumption of risk does not enter into this case. However, it is not vital for the reason that, if it does, the defendants waive the error committed by the court by not submitting a proper requested instruction.

The third proposition urged as to the error of the court in overruling the demurrers of the defendants to plaintiff's evidence, based on the theory that the injury was the result of an assumed risk, raises practically the same question raised by the two propositions heretofore discussed, and we fail to find any merit in such contention.

The fourth proposition urged is that the trial court erred in holding that the settlement between the plaintiff and railway company regarding plaintiff's injury, pleaded and proven by the defendants, was not a complete bar to plaintiff's recovery. The facts, as clearly disclosed by the record, concerning this issue showed that when the plaintiff was first in the hospital at St. Louis and at the time of his discharge therefrom, he was advised by the doctors and surgeons in charge that his injury was not of a permanent nature, and that he would fully recover, and after his return home, and at the time the settlement referred to was made, he apparently had fully recovered and evidently everybody connected with the transaction believed and was of the opinion that he suffered no permanent injury, but had fully recovered from the injury sustained. Plaintiff, in reply to that portion of defendants' answer setting up the agreement as a bar to further prosecution of this suit, alleges that the agreement was procured by fraud perpetrated on the part of the agents and employes of the defendant railway company, and further alleges that entering into the contract was the result of a mistake of fact, and that neither the plaintiff nor de-

fendants knew or had in mind the seriousness of the plaintiff's injury and the fact that same was of a permanent nature rather than temporary, and the facts as disclosed by the record, and as developed by the evidence in the case, we think clearly support this allegation and contention of plaintiff. The plaintiff at the time he entered into this agreement and settlement with the defendant railway company had apparently fully recovered, but after a few months his hip began to give him trouble, and when he returned to the hospital and it was determined that he was suffering with a process of absorption of the hip joint, which has practically destroyed the use of his hip, and is admitted to be a permanent injury, and while there is controversy as to whether or not this is a direct result of the injury sustained by reason of the accident complained of, the great weight of the evidence is in support of the contention that the condition now complained of and which exists is the direct result of the injury sustained. In support of appellee's contention that there existed a mutual mistake between the parties at the time of the execution of the contract in question, appellee cites 34 Cyc., page 1059, as follows:

"An innocent misrepresentation by a release of a material fact intended to be acted upon by the releasor and relied upon by him is as effective to avoid a release induced thereby as a mutual mistake."

And in support of this rule, the cases of Houston R. Co. v. Brown (Tex.) 69 S. W. 651, and Great Western R. C. v. Fowler, 136 Fed. 118, are cited, and in the last case the court said:

"Plaintiff, a railroad brakeman, after being injured, was solicited by defendant's claim agent to make a settlement, and went with him to the office of defendant's physician, who, after an examination, either through mistake or to deceive plaintiff, minimized his injuries and said that he would be able to work in a week or two; whereupon plaintiff, without other advice, was induced to sign a release of all damages and demands on account of his injuries, in consideration of payment of doctor's and nurse's bills, and his wages for such period of time. It developed, however, that plaintiff was seriously injured, requiring subsequent hazardous and delicate surgical operations on the skull, and that he would probably never be able to resume his avocation. Held, that the release was so executed by mutual mistake of the parties and was subject to vacation."

Also, the cases of Morton v. Roberts, 88 Okla. 263, 213 Pac. 297, Midland Valley R. Co. v. Clark, 78 Okla. 121, 189 Pac. 184,

and many other authorities are cited in support of this rule, which releases the appellee from the effect of the agreement as entered into, and, also, the case of O., R. I. & P. Ry. Co. v. Rogers, 60 Okla. 249, 159 Pac. 1132, is cited as an authority distinguishing between fraud and misrepresentation and mistake of fact, from which we quote the following:

"The plaintiff was advised by Mr. Brady, the claim agent, that the physicians of the company had reported the injury as merely a skin wound, and that it was not permanent. He was advised by Dr. Tye and Dr. Border, physicians of the company, that the injury was merely a skin wound, and not permanent. He was advised by Dr. Tye that he would have a good leg and would be able to perform labor to the extent and in the capacity he did prior to the injury. The plaintiff was a mere employe of the company. He had no knowledge of medical science. He could not judge of the effect of a burn as to its permanency or its temporary character. He relied upon the statements of the company's physicians to the effect that he would have a good leg, and believing and relying upon such statements, executed the release in question. In such cases, innocent misrepresentations made in good faith and under an honest belief at the time made that they are true, on the one hand, and relied and acted upon in good faith and under an honest belief of the truth, on the other hand, as well as statements made which are intentionally false and relied upon by the party executing a release, may equally be made the basis of relief from such releases."

In discussing this case the court say, at p. 1139:

"Before discussing the authorities cited by counsel for defendant, we shall state that they do not seem to be in point with the case at bar, for the reason that the release desired to be avoided in each particular instance cited and discussed was alleged to have been executed through fraud and misrepresentation, while the release in the case at bar was alleged to be executed not only through fraud and misrepresentation, but by mistake. The question of mistake does not enter into any of the cases cited by counsel for defendant."

In 23 R. C. L., p. 390 the author announces the following rule:

"As applied to releases much confusion exists regarding the right of an injured person who has released his claim for personal injuries to avoid the release, either in equity or in an action to recover for the injuries, on the ground of mutual mistake as to the extent or nature of the injuries. In some cases the court has intended to apply a general rule or principle of law, and decisions thereon result which are arbitrary and unjust in their application to the con-

crete case presented, and the result has been to sustain a release although it was clear from the surrounding facts and circumstances, the consideration and the character of the unknown injury, that the purpose of the release was to compensate for known injuries in the contemplation of the parties at that time, and that the probable existence of an unknown serious injury did not enter into consideration."

And also cite L. R. A. 1916 B, 776, as follows:

"A mistake of this character, therefore, should justify the rescission of a release executed under the belief that injuries are trivial, when as a matter of fact they are serious, where it appears that the purpose of the release was to compensate for apparent injuries, and that serious injuries were not contemplated by the parties, although in its terms the release is broad enough to cover all injuries resulting from the particular accident."

Many other authorities are cited, but we deem those referred to sufficient.

Appellee also cites the case of C., R. I. & P. Ry. Co. v. Burke, 73 Okla. 258, 175 Pac. 547, in support of this contention, which the appellant contends has been overruled by this court in the case of Davis v. Higgins, 95 Okla. 32, 217 Pac. 193, from an examination of which we find that it deals with an entirely different state of facts than the facts existing in the case at bar, and from the facts existing in the case cited by appellee in support of his contention. In the Davis-Higgins Case, the opinion discloses that the plaintiff in the case sustained a broken leg, and that he received treatment and that his leg healed, but continued to give trouble, and that under the advice of physicians he went to Chicago to see a bone specialist who advised the plaintiff that it would probably be necessary to break the leg again in order to bring about a complete recovery from the injury, which operation the plaintiff refused to submit to. During all the times heretofore mentioned there was a settlement pending between the plaintiff and the defendants, and before any complete recovery had been effected and after the plaintiff had been advised that he might not fully recover, he entered into an agreement and made a settlement with the defendants and thereafter sought to disregard the same. He received a consideration of $5,250 in settlement, which was not an inadequate consideration for the injury sustained, and in view of the fact that he made the settlement at a time when he had not fully recovered, and when he was in possession of facts sufficient to put him on notice as to the extent of his injury, and as to whether or not it was temporary or permanent, and therefore the court very properly held that the plaintiff was bound by the settlement, and that same constitutes a bar to the prosecution of his claim for any greater amount.

Appellants also cite the case of Chicago & N. W. Ry. Co. v. Wilcox, 116 Fed. 913, as an authority supporting their contention that the settlement in this case is a bar to a recovery on the part of plaintiff, but from an examination of the case relied on we find that the plaintiff was suffering from a fracture of the neck of the femur, or hip bone; the plaintiff was a woman, 65 years of age, and had followed the occupation of a nurse for ten years prior to the injury and was fully advised of the nature of her injury, and had also been advised that it would require considerable length of time to perfect a recovery, and that the results were somewhat in doubt as to a complete or permanent recovery on account of the nature of her injury and her advanced years, and under these conditions, and while still suffering from the injury and before recovery had been effectively established, entered into a settlement of her claim with the defendants, and the court held that the settlement was binding and was a bar to any future recovery based on a claim of permanent injury. This, like the other authorities relied upon by appellants, is based on a different state of facts from that, with which we are here presented. No one contended or represented to the plaintiff that she had recovered, in fact she knew her condition, and knew she had not recovered, and should have known that a complete recovery was doubtful, in fact was so advised, while in the case at bar, the plaintiff apparently had fully recovered, believed that he had recovered, and was so advised by all parties concerned, when in fact he had suffered an injury which resulted in a permanent physical disability, which clearly constitutes a mistake of fact, mutual on the part of all parties concerned. Consequently, we cannot consent or agree to the contention made by appellants in this particular.

The fifth proposition urged is as to misconduct of counsel for plaintiff in referring to the repairs made on the roadbed or the track at the point where the injury occurred, immediately thereafter, and the error of the court in admitting evidence in regard to said repairs. The plaintiff in the trial of the case attempted to prove or offered to make proof of the fact that repairs were made immediately after the injury was sustained at the point where same occurred, which was objected to by the defendant and the objections sustained by the court. The plain-

cliff went on the stand as a witness, and on cross-examination stated that there were 12 or 14 new ties put in this place, referring to the place where the injury was sustained. This particular part of his answer was not responsive to the question asked by counsel, however, no exceptions were taken or objections made, and no motion to strike the answer from the record was made, and in the argument of the case, counsel for plaintiff referred to this particular piece of evidence. Counsel for defendants objected to the statements made, whereupon the court instructed the jury to disregard the statement and not consider it at all in making up their verdict of the case. Evidence of repairs is generally held not to be evidence of negligence, but in view of the fact that the principal portion of the evidence in this particular was the result of cross-examination, although not in response to the question asked, but in the absence of motion to strike or special objections thereto, we think eliminates the errors complained of, and constitutes a waiver of error, if any was committed. While evidence of this character is not competent for the purpose of showing negligence, it is not necessarily incompetent in every particular. 29 Cyc., pp. 618 and 619:

"In showing condition prior to repair. An exception to the rule excluding evidence of changes, repairs made, or precautions taken after the injury exists where the fact that the repair or change has been made is brought out in showing the condition existing at the time of the accident.

"(5) In rebuttal of defendant's evidence. Evidence of changes, alterations, or repairs is admissible to rebut testimony on the part of defendant that the condition existing at the time of the accident could not have been improved, or that such condition was a necessary one. So it is admissible to contradict evidence on the part of the defendant that no change has been made, or to show the incorrectness of diagrams of the place of the accident put in evidence by defendant, or that an examination immediately after the accident showed the nonexistence of the defects."

From which we conclude that evidence of this character might be admissible and competent for the purpose of contradiction or impeachment, and while there was no positive denial of the existence of the defect in the roadbed or track, such as was complained of by plaintiff, there was some evidence of a negative character to the effect that no defect existed, and we think in rebuttal to such testimony, such evidence as is here complained of by the appellants might very properly be offered for the purpose of contradiction or impeaching the testimony of any particular witness on this point.

The sixth proposition urged by appellants is that the court erred in the instruction given to the jury, and the contention is made that the instructions complained of did not properly submit the question of assumption of risk, and while the court's attention is called to various instructions given, the same complaint is urged against a number of the instructions, that of failure to instruct on the question of assumption of risk, but as heretofore stated, we are inclined to doubt that this question is in the case, and if in fact such an instruction should have been given, the same was waived by the appellants in the trial of the case, and no sufficient exceptions or objections reserved which will entitle the appellants to avail themselves of the errors complained of at this time. The record discloses that they were requested by the court to submit instructions that they desired at the time the instructions were being prepared by the court, and that they then announced that the only instruction that they desired to request was a peremptory instruction directing the jury to return a verdict in favor of the defendants; they also complain of instruction No. 7 given by the court, which submitted to the jury the effect of the agreement entered into and pleaded by the defendants as a bar to the right of plaintiff to recover, and the law applicable to same, which submits that question to the jury on the question of mistake of fact and inadequacy of consideration, and from a careful reading of the instructions complained of we do not find that it is subject to the objections urged by the appellants, and it is a fair presentation of the law governing the issues involved. Appellants cite the case of Davis v. Higgins, supra, in support of their contention, and objections to the instruction No. 7, but, as heretofore stated, the facts in that case are in no wise similar to the facts in the case at bar and are governed by entirely different rules of law.

Appellants also complain of instruction No. 10, and instruction on the measure of damages, and especially to the latter clause of same, wherein the court advised the jury to award to the plaintiff such a sum as would reasonably compensate him for the injuries sustained, not to exceed the sum of $50,000, the amount sued for. Appellants contend that this instruction is in direct conflict with instructions Nos. 2 and 4, in which the court advised the jury that if they found the plaintiff guilty of negligence which

contributed to his injury, then they should reduce the amount of plaintiff's recovery in the proportion that the plaintiff's negligence contributed to such injury, which comes under the rule of contributory negligence under the federal act, which is the law governing this case, it being an interstate train in which plaintiff received the injuries, but we do not regard this as reversible error in the light of the general rule, which requires the jury to consider the instructions as a whole as announced in the case of M., K. & T. Ry. Co. v. Lenahan, 85 Okla. 290, 206 Pac. 233, as follows:

"This court in a long line of cases has announced the following rule: 'All of the instructions should be considered together, and if, when considered as a whole, they state the law correctly and without conflict, it is sufficient, although one or more standing alone might be incomplete.'"

"The instructions of the court should be considered as a whole and in their entirety, and no particular paragraph thereof should be singled out and given an interpretation which some other paragraph clearly shows was not intended to be placed upon it."

Badger Oil Co. v. Clay, 83 Okla. 25, 200 Pac. 433; M., O. & G. Railroad Co. v. Collins, 47 Okla. 761, 150 Pac. 142, and many other authorities are cited in support of this rule, from which we determine that there is no merit in the contention of appellants. The instructions taken as a whole clearly set forth the law of the case in this particular, and instruction No. 10, complained of, on the measure of damages, is not subject to the complaint made. In conclusion, the appellee calls attention to section 2822, Comp. Stat. 1921, and the case of Spencer v. Lambert, 68 Okla. 291, 173 Pac. 1035, construing same and upholding the harmless error doctrine, and contends that there was a fair and impartial trial in this case, and while the damage awarded was liberal, was in no wise excessive, and under the rule as announced in the last mentioned case, the case should be affirmed.

The manner in which the injury occurred in this case is rather novel, and we take it that such an injury rarely ever occurs in the manner in which this injury is alleged to have occurred, but assuming that the theory of the plaintiff is correct, and from a careful examination of the record in this case, which is very voluminous, we are inclined to the opinion that there is evidence sufficient to sustain the same on the question of negligence, and the manner in which the injury occurred, and while there might be some controversy and conflict of opinion

as to the propriety of holding that such a condition under all the circumstances in this case, should constitute and be declared to be negligence on the part of the railway company, we think that under the authorities and the rules that have been announced concerning such matters, there is ample authority to so determine and justify the holding that the railway company was guilty of negligence in their failure to properly maintain their roadbed and track which, according to the theory of the plaintiff, was the result of or caused his injury, and after a careful consideration of the record and of the authorities cited, many of which we make no mention of in our opinion by reason of the great number of authorities cited, we have arrived at the conclusion, and are of the opinion that no error was committed which will justify a reversal of this case, and we therefore recommend that the same be affirmed.

## On Rehearing.

PER CURIAM. The petition for rehearing in this cause presents to this court again the six grounds of error relied upon and argued that were originally presented to this court in the original brief of plaintiffs in error in this case. The original opinion discusses in minute detail each and every one of the assignments of error. The jury, by its verdict, settled all disputed questions of fact and resolved all contradictory statements in favor of the defendant in error, and by its verdict, based upon the record evidence, said that the defendant in error was in the place where he had a right to be; that he was injured as alleged in his petition; that the injury was sustained because of a dip, which occurred between the tender and the engine, caused by a defective low joint in the track of the railway company, and not because of the coming together of the engine and tender because of a curve in said track. These two questions were presented by the parties in the trial on the main issue of whether the plaintiff in error railway company was responsible in damages to the defendant in error. The evidence fully sustains the verdict of the jury upon the main issue, and this court is, therefore, concluded by said verdict. This phase of the case is thoroughly discussed and the authorities cited in the original opinion in this case.

The attorneys for plaintiffs in error complain that the court did not instruct the jury on the question of assumption of risk. Upon examination of the whole record and briefs of counsel, we are of the opinion that

the question of assumption of risk by the defendant in error, in the light of the case of Alko-Nak Co. v. Barton et al., 88 Okla. 212, 212 Pac. 591, referred to and quoted from in the original opinion in this case, has no place in this action, and that the failure of the court to instruct the jury upon this question is not reversible error, but, if the question of assumption of risk is present in this case, then the plaintiffs in error waived their right to this assignment of error when they were called upon in the trial court to present timely requests for other or further instructions by the court, when they replied to the court's request that:

"The only instruction, which they desired to submit to the court, was a request for a directed verdict in favor of the defendants."

This question is fully discussed in the original opinion and numerous decisions of this court are quoted holding that under such circumstances the plaintiffs in error are not entitled to a reversal of the case upon this assignment of error and are not entitled to complain of the failure of the court to give such instruction.

They further complain that the overruling of the demurrers to the evidence of defendant in error and the denial of their request for an instructed verdict constituted reversible error. We are of the opinion that the evidence presented by the defendant in error at the trial was ample to justify the submission of the cause to the jury, and that the overruling of the motion of plaintiffs in error and the denial of their requests for an instructed verdict are correct, and that the original opinion in this case fully discusses and properly disposes of this phase of the case.

They further complain that the court erred in holding that the settlement between defendant in error and the railway company, regarding injuries of defendant in error, was not a bar to the recovery of defendant in error. The evidence is conclusive that this settlement was made under a mutual mistake that the defendant in error had fully recovered, as he had been advised by the head surgeon for the railway company and his assistants, and that the $800 paid to him was not paid him for the injury suffered by him but for wages that would have been earned by him during the time he was incapacitated for work on account of his injury, and it was not in contemplation of the parties that this payment was to compensate him for his personal injuries. This, for the reason that the

first offer made by the railway company was the sum of $700, which the defendant in error refused on the ground that there had been a raise in wages for like services performed by him during the time that he was incapacitated, and the representative of the railway company then acceded to this proposition and figured up the exact amount he would be entitled to, including the raise, which amounted to the sum of $800, and this exact amount was paid and accepted by him, under the belief of the representative of the railway company and the defendant in error, expressed by both at the time of the settlement, that the defendant in error was permanently cured, when, in truth and in fact, he was not, as after developments showed that he was suffering from an injury that totally deprived him of the use of one leg. This phase of the case is fully and completely covered in the original opinion.

The plaintiffs in error again complain that they were prejudiced by the conduct of the defendant in error and his counsel in referring to the repairs made by the railway company immediately after the accident. The record shows that the only testimony that is allowed to appear in the record appears in the cross-examination of the defendant in error by counsel for plaintiffs in error, where he stated that the track had been repaired and new ties placed at the place where the accident occurred. This statement of the witness was not objected to at the time nor was there any motion made to strike this evidence, but it stands in the record in that condition and when defendant in error offered to prove the subsequent repairs by direct testimony, the court refused to permit such evidence to be introduced upon the objection of counsel for plaintiffs in error. We are of the opinion that this evidence was admissible as rebuttal evidence of defendant in error to contradict the evidence on part of the plaintiffs in error to show the incorrectness of the photographs introduced by plaintiffs in error of the engine and tender with the figure of a man standing in the supposed position of the defendant in error at the time of his injury upon the track where the injury occurred, which photographs were taken after the repairs had been made and long after the injury had occurred, under the rule laid down in 29 Cyc. 618-619. And for the further reason we are of the opinion that no prejudicial error can be predicated upon the fact that counsel referred to this in his argument, in face of the fact that the trial judge at the time stopped counsel upon objection be-

ing made to this argument and instructed the jury not to consider any statement that had been made by counsel with reference to the repairs made in the roadbed, in their consideration of the case.

The plaintiffs in error further complain that the court gave contradictory instructions, in this, that he instructed the jury if it found in favor of the defendant in error, it could assess his damage, not more than $50,000 claimed in the petition, and in another instruction charged the jury that, if it found for the defendant in error, it should give credit for the sum of $800 already paid by plaintiffs in error to the defendant in error. We are of the opinion that these two instructions are not inconsistent, as the amount found by the jury was for $22,275, and the plaintiffs in error could not be prejudiced by such an instruction, and that the instructions taken as a whole fairly presented the issues to the jury.

We are, therefore, of the opinion that the original opinion handed down by this court on the 16th day of September, 1924, arrives at the right conclusion and should be adhered to, and the opinion of the lower court should be and is hereby affirmed.

By the Court: It is so ordered.